*726 OPINION OF THE COURT
Paul G. Feinman, J.
In this CPLR article 78 proceeding, petitioner, a convicted murderer, seeks to vacate the November 16, 2004 order of respondent denying him release on parole. Respondent cross-moved for a change of venue prior to answering the petition, but after the initial oral argument on October 19, 2005, the matter was adjourned to permit respondent to submit an answer which preserved its defense of improper venue. The court reserved decision on the cross motion for a change of venue. The respondent subsequently answered. For the reasons which follow, the petition and cross motion are both denied and the proceeding is dismissed.
Factual and Procedural Background
Petitioner is an inmate under the custody and control of the New York State Department of Correctional Services (petition II 4). He is currently incarcerated in Shawangunk Correctional Facility in Ulster County, New York, where he is serving an indeterminate sentence of 20 years to life after being convicted in September 1989 of murder in the second degree (verified answer HIT 4, 5). The murder occurred in the Metropolitan Opera House here in New York County and the petitioner was prosecuted and convicted in this county. At the time of the crime, petitioner was employed as a stagehand. The victim was a musician who was pushed to her death from atop a backstage elevator shaft after she rejected petitioner’s sexual advances, which the evidence indicated she physically resisted. Petitioner originally appeared before the Parole Board in November 2000 and then again in November 2002; on both occasions he was denied parole and ordered held for a 24-month period before his next Parole Board interview (verified answer 11 7).
On November 16, 2004, petitioner underwent his third Parole Board interview (petition appendix at 184-203 [hereinafter hearing]). The Board noted that many letters had been written on his behalf by friends and family, as well as others, including his union’s president, and at least one church official (hearing at 7-8). The Board noted his activities over the recent years, including that he had completed his Associate’s degree (hearing at 9). They also questioned him concerning the crime for which he is incarcerated, in particular his thoughts at the time he pushed the victim to her death, his failure to turn himself in, and his decision to keep working (hearing at 14-16). He explained that *727 she “came on to him” when he entered the elevator in which she was a passenger, and, when he tried to kiss her, she slapped him and kneed him in the groin, but “she didn’t say no.” (Hearing at 5, 6.) He explained that he had been abused as a child by nonfamily members and that something just “snapped” on the night of the murder (hearing at 10). He stated that nothing like it would ever happen again (hearing at 11). He offered his prayers and sympathy to the victim’s family and for their suffering, and stated that he had a lot of support from many people and “guaranteed” that the Board would not regret releasing him (hearing at 13-14). One of the Commissioners commented that his actions following the murder, of returning to work and going about his days “like it didn’t affect [petitioner] one bit,” reflected a “complete disregard for . . . societal norms” (hearing at 16:16-20; 17).
After the hearing, the Board concluded that petitioner was not an appropriate candidate for parole release at that time, and ordered that he be held for another 24-month period. The Commissioners explained their decision to deny release was based on petitioner’s explanation that he “snapped” because of alleged abuse; in their determination, he did not show an understanding of his actions, despite showing adjustment in the course of the two-year period since the last Board hearing (hearing at 19-20).
Petitioner appealed the Board’s decision to the Appeals Unit of the Board of Parole which, on about June 21, 2005, affirmed the Board’s decision (petition exhibits A, B). Thereafter, on September 9, 2005, petitioner commenced the instant proceeding seeking to have the decision overturned and to be released to parole supervision, or for a new parole hearing, or for a reduction in the two-year hold imposed on him.
He argues that the Board violated lawful procedure, was affected by errors of law and that its determination was an abuse of discretion. He contends that the Board relied exclusively on the nature of his underlying offense rather than considering all the other statutorily mandated factors, improperly applied the “deprecation” standard of Executive Law § 259-i (2) (c), made a predetermined decision, effectively resentenced him without due process, and gave him an excessive hold period before his next parole hearing. Although not argued explicitly, the petition implies that the Board’s determination was preordained given the media coverage of the case at the time of the incident and thereafter. Indeed, at one point in the hearing itself, the *728 petitioner declined to answer one of the Commissioner’s questions because it would “end up in The New York Times.”
Respondent cross-moves to change venue to either Albany or Cayuga County, after having previously served a demand to change venue pursuant to CPLR 511 (a) and (b) (notice of cross motion exhibit A). He argues that Albany is the location of his office, and that Cayuga County is the locale of Auburn Correctional Facility, where the parole hearing took place. New York County, respondent contends, is an improper venue in accordance with CPLR 506 (b).
Legal Analysis
1. Cross Motion to Change Venue
In general, an article 78 proceeding can be commenced
“in any county within the judicial district where the respondent made the determination complained of or refused to perform the duty specifically enjoined upon him by law, or where the proceedings were brought or taken in the course of which the matter sought to be restrained originated, or where the material events otherwise took place, or where the principal office of the respondent is located” (CPLR 506 [b] [emphasis added]).
The phrase “where the material events otherwise took place” has been interpreted to mean the locale of the underlying events that gave rise to the official action in dispute (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 506, at 86, citing Matter of Brothers of Mercy Nursing & Rehabilitation Ctr. v DeBuono, 237 AD2d 907 [4th Dept 1997]). In Brothers of Mercy, which challenged the State Department of Health’s method of calculating the nursing home’s Medicaid reimbursement rates, the Court held that the proper venue was the county “where the acts of [the nursing home] gave rise to the reimbursement rate determinations,” rather than Albany County where the reimbursement rate determinations were calculated (237 AD2d at 908). (See also, Ronco Communications & Elees, v Valentine, 70 AD2d 773 [4th Dept 1979] [proceeding concerning nonpayment for services rendered properly brought where the workers performed their labor, rather than the county where the determination to withhold money was made]; Matter of Moors v Craig, 205 App Div 897 [2d Dept 1923] [county where petitioner’s office was located, in which he was derelict in his duty, was location where the “material facts” occurred (citing Civ Prac Act § 1334)]; Matter of Hawkins v Coughlin, 132 Misc *729 2d 45, 47 [1986] [sentencing and parole determination were so intertwined as to constitute “material facts” which “otherwise took place” within the county], affd 132 AD2d 381 [1987], affd 72 NY2d 158 [1988]; Matter of Browne v New York State Bd. of Parole, 25 Misc 2d 1050 [Sup Ct, Queens County 1960] [review of Parole Board determination regarding prison term expiration properly brought in Queens County, where the sentences were imposed (citing Civ Prac Act § 1287)], affd 12 AD2d 800 [2d Dept 1961], revd on other grounds 10 NY2d 116 [1961]; Matter of Weinstein v Dennison, 7 Misc 3d 1009[A], 2005 NY Slip Op 50518[U] [Sup Ct, NY County 2005] [location of sentencing is proper venue for review of parole ruling]; but see, Matter of Howard v New York State Bd. of Parole, 5 AD3d 271, 271 [1st Dept 2004] [case should have been venued either in Sullivan County, where the denial of parole took place, or Albany County, where respondent’s principal office is located]; People ex rel. Denham v Ward, 118 Misc 2d 836 [Sup Ct, Queens County 1983] [determination complained of did not occur in Queens County]; Matter of Hines v State Bd. of Parole, 181 Misc 280 [Sup Ct, Westchester County 1943] [proceeding originally venued in district of respondent’s office; respondent properly moved to change venue to the county where the Board determination complained of was made], affd 267 App Div 881 [2d Dept 1944], affd 293 NY 254 [1944].)
Here, respondent cross-moves seeking to change venue either to the county where the November 2004 parole determination was made, or the county where respondent’s office is located, pointing to the above-referenced decisions as well as certain other unpublished decisions in support of his motion. Although there are many trial level cases holding in support of his position, nonetheless it would seem the better reading of the CPLR 506 (b) clause “where the material events otherwise took place” to be that it refers to the underlying events that resulted in petitioner’s incarceration and parole request. To read the phrase as meaning where the denial of parole took place would make that clause redundant with the clause already included in the statute explicitly providing that the proceeding may be commenced in the county where the respondent made the determination complained of. This redundancy would render the clause “where the material events otherwise took place” meaningless and ineffective, in contradiction to the rules of statutory construction and interpretation. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 144 [providing that statutes “will not be construed as to render them ineffective”]; see also, Allen v *730 Stevens, 161 NY 122, 145 [1899] [“it is a just rule, always to be observed, that the court shall assume that every provision of the statute was intended to serve some useful purpose”]; Lyon v Manhattan Ry. Co., 142 NY 298, 303 [1894] [“(n)o part of the (statute) . . . is to be held inoperative if they can all be made to stand and work together”].)
In the instant matter, New York County was the situs of petitioner’s crime and of his sentencing, and therefore venue is proper in New York County. Accordingly, the cross motion to change venue is denied.
It bears noting that at the initial oral argument the respondent’s counsel’s arguments implied that respondent was concerned that “downstate Justices” were more receptive to arguments that parole was being improperly denied. Such an argument is insulting to all the state’s justices, implying as it does, that there are whole regions where justices would decide a case other than on an impartial assessment of the facts and the law. The argument betrays the cross motion for a naked attempt at forum-shopping that cannot be countenanced by this or any other court. More importantly, however, as already explained, the statute on its face provides a basis for venue in New York County.
2. The Petition
It is a well-settled rule that judicial review of administrative determinations is limited to the grounds invoked by the agency (Matter of Aronsky v Board of Educ., Community School Dist. No. 22 of City of N.Y., 75 NY2d 997 [1990]). The court may not substitute its judgment for that of the agency’s determination but shall decide if the determination can be supported on any reasonable basis (Matter of Clancy-Cullen Stor. Co. v Board of Elections of City of N.Y., 98 AD2d 635, 636 [1st Dept 1983]). The test of whether a decision is arbitrary or capricious is determined largely by “ ‘whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact.’ ” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974], quoting 1 NY Jur, Administrative Law § 184, at 609.) Furthermore, an arbitrary action is without sound basis in reason and is generally taken without regard to the facts (id.).
Reviewing courts are “not empowered to substitute their judgment or discretion for that of an administrative agency merely because they are of the opinion that a better solution *731 could thereby be attained.” (Peconic Bay Broadcasting Corp. v Board of Appeals, Town of Southampton, 99 AD2d 773, 774 [2d Dept 1984].) The scope of review does not include “any discretionary authority or interest of justice jurisdiction in reviewing the penalty imposed by the Authority” and “the sanction must be upheld unless it shocks the judicial conscience” (Matter of Featherstone v Franco, 95 NY2d 550, 554 [2000], citing Matter of Pell at 232-234).
Moreover, it is axiomatic that credibility determinations are best made by the person who actually sees and hears the witness. “It is basic that the decision by an Administrative Hearing Officer to credit the testimony of a given witness is largely unreviewable by the courts, who are disadvantaged in such matters because their review is confined to a lifeless record.” (Matter of Berenhaus v Ward, 70 NY2d 436, 443 [1987].) The reviewing court must defer to the administrative factfinder’s assessment of the evidence and the credibility of the witnesses (Lindemann v American Horse Shows Assn., 222 AD2d 248, 250 [1st Dept 1995], citing Berenhaus).
Petitioner’s arguments concerning the manner of the Board’s decision making, including that it failed to properly apply the “deprecation” standard contained in Executive Law § 259-i (2) (c), or that it resentenced him without due process or gave him an excessive hold period, are unpersuasive. The Parole Board has the ultimate authority as to whether to release a convict (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 77 [1980]). The courts may not interfere unless there is no rational basis for the exercise of discretion or the action complained of is found to be “arbitrary and capricious.” (Matter of Pell, 34 NY2d at 231.) By statute, the Board is to consider several factors, among them the institutional record of the inmate, including academic achievements; therapy; the prisoner’s release plans; and the statement of the crime victim or her representative (Matter of Garcia v New York State Div. of Parole, 239 AD2d 235, 238 [1st Dept 1997], citing Executive Law § 259-i [2] [c]). Where the sentencing court, and not the Board of Parole, has set the minimum sentence of imprisonment, the Board is also to consider the seriousness of the offense and the inmate’s prior criminal record, if any (Garcia at 238-239, citing Matter of King v New York State Div. of Parole, 83 NY2d 788 [1994]). Although the statutory factors must be considered, the weight to be accorded to each of these factors lies solely within the discretion of the Parole Board (Garcia at 239, citing Matter of Klein v New *732 York State Div. of Parole, 202 AD2d 319, 320 [1st Dept 1994]; Matter of McKee v New York State Bd. of Parole, 157 AD2d 944, 945 [3d Dept 1990]; People ex rel. Herbert v New York State Bd. of Parole, 97 AD2d 128, 133 [1st Dept 1983]).
A petitioner seeking to obtain judicial review on the grounds that the Board did not properly consider all of the relevant factors, or that an improper factor was considered, bears a heavy burden to establish his or her case (Matter of Russo, 50 NY2d at 77). Here, the Commissioners interviewed petitioner extensively at the time of his parole request. They made reference to having considered various documents and items which, under the statute, are relevant to their determination. Petitioner does not make a convincing showing that their determination was not made based on a consideration of each of the factors enumerated by Executive Law § 259-i (2) (c) (see, Matter of McLain v New York State Div. of Parole, 204 AD2d 456, 457 [2d Dept 1994]). The Board is not required to expressly discuss each of the statutory factors in its determination (Matter of King v New York State Div. of Parole, 83 NY2d at 791). Here, there is no evidence that the Commissioners predetermined their determination or that they considered factors outside of the statutory guidelines. As they afforded petitioner a hearing at which he made certain comments that could be interpreted to show a failure to take responsibility or an understanding of the events leading to the victim’s death, such as his statements that she “came on to” him and that she did not say “no,” although she in fact slapped him and kneed him, it cannot be held that the decision by the Commissioners to deny parole was arbitrary or capricious or an abuse of discretion. Nor did the Board abuse its discretion or resentence him when it directed two more years of incarceration, as this determination is within its discretion (Matter of Russo v New York State Bd. of Parole, 50 NY2d at 77).
For all of these reasons, the petition to vacate or remand or to reduce the length of continued incarceration is denied. It is ordered that the cross motion to change venue is denied; and it is further ordered and adjudged that the petition is denied on its merits and the proceeding dismissed.