■ In the Matter of TYRON E. GARCIA, Respondent, v NEW YORK STATE DIVISION OF PAROLE, Appellant. [657 NYS2d 415] —Judgment, Supreme Court, New York County (William Da-

vis, J.), entered March 27, 1996, which, *inter alia,* granted petitioner's application brought pursuant to CPLR article 78 to annul respondent's decision denying petitioner's application for parole, unanimously reversed, on the law, without costs, the decision reinstated and the petition denied.

In June, 1983, petitioner Tyrone Garcia was charged and convicted of the attempted murder of William Wachtel, who, in exchange for a sum of money paid by his wife, was kidnapped by petitioner and two others, one of whom was Wachtel's wife's boyfriend, stuffed in the trunk of a car and shot numerous times through the trunk. Petitioner, who at the time had no criminal history other than a youthful offender adjudication based upon an arrest for criminal trespass, does not deny that he participated in this crime, though he contends that he only agreed to participate in a robbery for a small sum of money and was deceived as to the intentions of the other participants, who had set out from the start to murder Wachtel. Petitioner admits that, after the other men had fired into the trunk several times, he himself fired two more shots into the trunk, though he contends that he had no choice but to do so. The men then left Wachtel on the side of the road for dead. Although Wachtel survived, two bullets remain lodged in his head.

On August 1, 1984, pursuant to a jury verdict, a judgment was rendered convicting petitioner of attempted murder in the second degree, kidnapping in the second degree, two counts of robbery in the first degree, and criminal possession of a weapon in the second degree, and sentencing him to consecutive terms of imprisonment totaling 38$^1/_3$ to 115 years.

On appeal the conviction was reversed because a juror was improperly discharged over the objection of defendant, and a new trial was ordered (*People v Garcia,* 153 AD2d 951, *lv denied* 75 NY2d 919). In March, 1991, petitioner pleaded guilty to the same crimes of which he had previously been convicted and was sentenced to five terms of 8 to 24 years, and one term of 5 to 15 years, all to run concurrently. On appeal, this conviction was affirmed (*People v Garcia,* 186 AD2d 674, *lv denied* 81 NY2d 762).

While in prison, petitioner, who was 20 years old, essentially illiterate and leading an admittedly self-destructive life style at the time the crime was committed, has made enormous strides. He has earned a high school equivalency diploma as well as an Associate's Degree in Business from Sullivan County Community College and has designed and presented seminars to high school students, directed at teaching young people the

consequences of delinquent behavior, for which he has received awards from the Woodbourne Community Awareness Program as well as an award of recognition for outstanding service to the young people of Sullivan County from the Sullivan County Youth Board and Youth Bureau and commendations from local schools.

Furthermore, having successfully completed the Adult Peer Counseling Bilingual Compadre Helper Program sponsored by the New York State Education Department, a workshop for training in Nonviolent Conflict Resolution sponsored by the Quakers Alternative to Violence Project and a counseling program sponsored by the Hispanic Inmate Organization, he has now started counseling other young inmates regarding alcohol and drug problems.

Petitioner also served as secretary and then president of the Hispanic Inmate Organization and assistant director of the Community Awareness Program, in which he has been commended for playing a key role in developing programs that meet the needs of the Hispanic inmate population. He has worked as an Inmate Grievance Clerk, a law clerk, a law class instructor and as clerk to the prison chaplain. He has received a number of clearly sincere recommendations, which emphasize his motivation and his ability to reach others. He has also demonstrated a strong preparation for release by successfully completing the Pre-Release Cycle Program, a program in Labor Market Preparedness and the Personality Plus seminar at the Personality Development Center, and by obtaining three offers of post-release employment.

Having been in prison since 1984, petitioner came up for his second hearing before the Board of Parole on April 12, 1993. During the hearing, the Board conducted a lengthy interview of petitioner about, *inter alia*, the crime he committed, what he had accomplished in prison, his prior criminal history and his plans for when he gets out of prison. Immediately following this interview, one of the two Commissioners who conducted the hearing dictated the following decision: "Following a review of your record and personal interview, parole is again denied based upon the heinous nature of your crime wherein you attempted to murder your victim in an arranged in-concert, 'for hire' attempt at the execution of the victim. Your prior record reflects other offenses. However, escalation of your behavior and real callousness is shown in the instant offense. During interview you make a positive presentation and we do note your accomplishments. Maintain satisfactory programming until reappearance."

In response to petitioner's administrative appeal, the appeals unit upheld the Board's denial and petitioner then commenced the instant article 78 proceeding, in which he argues that the decision of the Board was arbitrary and capricious in that the Board placed too much emphasis on the seriousness of the crime and failed to genuinely consider other factors such as his good institutional record, and that the Board's decision was based on bias and hostility toward him.

The Supreme Court granted the petition and remanded to the Parole Board for a de novo hearing, holding, in pertinent part:

"Here, the record before the respondent did not reveal instances of misbehavior or infractions during petitioner's imprisonment; moreover, his criminal record prior to his conviction did not reveal a history of criminal behavior. Lastly, the respondent's limited acknowledgment of petitioner's 'accomplishments' pales against the letters of references, certificates, diplomas, and job offers annexed to petitioner's application.

"The hearing is devoid of any information that substantiates respondent's contentions that considerations other than the petitioner's criminal acts were reviewed in reaching its determination. * * * The role of the respondent is not to resentence the applicant, but to determine whether he or she should be released based on the totality of the circumstances that suggest that the respondent will not continue his criminal behavior, thus, endangering the general public".

The standards governing discretionary release to parole supervision are set forth in Executive Law § 259-i (2) (c). That section states, in part: "parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law."

The factors to be considered in exercising this discretion are, *inter alia*, the institutional record of the inmate, including academic achievements; the release plans of the inmate; and the written statement of the crime victim or his representative (Executive Law § 259-i [2] [c] [i]-[v]). In addition, where, as here, the sentencing court, and not the Board of Parole, has set the minimum sentence of imprisonment, the Board must also consider the seriousness of the offense and the inmate's prior

criminal record (§ 259-i [1] [a]; [2] [c]; *see also, Matter of King v New York State Div. of Parole*, 83 NY2d 788). However, while the relevant statutory factors must be considered, it is well settled that the weight to be accorded to each of the factors lies solely within the discretion of the Parole Board (*see, Matter of Klein v New York State Div. of Parole*, 202 AD2d 319, 320; *Matter of McKee v New York State Bd. of Parole*, 157 AD2d 944, 945; *People ex rel. Herbert v New York State Bd. of Parole*, 97 AD2d 128, 133). Moreover, the Board is not required to expressly discuss each of the guidelines in its determination (*Matter of King v New York State Div. of Parole, supra*, 83 NY2d, at 791).

Clearly, the Board of Parole has been vested with an extraordinary degree of responsibility in determining who will go free and who will remain in prison, and a petitioner who seeks to obtain judicial review on the grounds that the Board did not properly consider all of the relevant factors, or that an improper factor was considered, bears a heavy burden (*Matter of Russo v New York State Bd. of Parole*, 50 NY2d 69, 77).

Here, petitioner has not met that burden. The record of the hearing demonstrates that petitioner was given ample opportunity to speak about his education and other significant accomplishments while in prison, his plans for his release, his remorse for what he did and how he feels he has changed as a person. For example, the panel noted that petitioner was in the good graces of some of the people he worked with; asked him about his involvement with the Hispanic and Cultural Affairs Program; inquired about his family; inquired about his newfound relationship with his foster mother; and gave him an opportunity to add "anything you think we missed." The Board also reviewed the letters of recommendation submitted on petitioner's behalf. Moreover, even though it is not required to do so, the Board's decision gives some indication that the relevant factors were considered. After noting the extremely serious nature of the crime, the Board stated "[d]uring interview, you make a positive presentation, and we do note your many accomplishments". Additionally, unlike the situation in *Matter of King (supra)*, there is no reason to believe that the Board relied on improper factors beyond the confines of Executive Law § 259-i (2) (c) in making its determination. In this context, we note that petitioner openly discussed his past criminal behavior with the Board, admitting to prior arrests, and a lifestyle that was "self-destructive" at the time. Thus, the Board's recognition that petitioner's criminal conduct was not only serious, but also an escalation of prior criminal

behavior, was grounded in fact. Nor is there a basis to find that the Board was predisposed to deny petitioner's application. Simply because the Board found that the severity of the crime was enough to deny petitioner parole does not mean the Board was biased.

Finally, in light of the truly dreadful facts of this crime, there is no question that the record supports a determination that the extremely serious nature of the crime so outweighs petitioner's impressive accomplishments while in prison as to warrant a denial of parole at the time of this hearing, in 1993. Under these circumstances, while the IAS Court may have been sincerely impressed by petitioner's obvious spirit of redemption and very laudable accomplishments, it was not entitled to substitute its judgment for that of the Board. Concur—Milonas, J. P., Ellerin, Rubin and Mazzarelli, JJ.