OPINION OF THE COURT
Lucy Billings, J.
Petitioner challenges respondent New York State Board of Parole’s decision, affirmed August 5, 2005, after a parole hearing and determination January 25, 2005, denying her parole, and seeks a new parole hearing. (CPLR 7803; Matter of King v New York State Div. of Parole, 83 NY2d 788, 790 [1994]; Matter of Wallman v Travis, 18 AD3d 304, 310-311 [1st Dept 2005]; Matter of Quartararo v New York State Div. of Parole, 224 AD2d 266 [1st Dept 1996]; Matter of Friedgood v New York State Bd. of Parole, 22 AD3d 950, 951 [3d Dept 2005].) Respondent has moved to change the venue of this proceeding to either Westchester or Albany county on the ground that Bronx county is an improper venue. (CPLR 506 [b]; 510 [1]; 511 [b].) Upon oral arguments on the motion and on the petition, for the reasons explained below, the court denies respondent’s motion and grants the petition.
I. Petitioner Jean Coaxum
Petitioner Jean Coaxum, incarcerated at Bedford Hills Correctional Facility in Westchester County, is indisputably the “model prisoner” for whom the parole system is intended to work. (Wallman v Travis, 18 AD3d at 310.) In May 1981, at age 27, petitioner was addicted to drugs. She and a friend, to satisfy their addiction, followed an elderly woman into her apartment in Bronx county. The friend tied up and gagged the woman while petitioner looked for personal property to steal. Petitioner did not expect or intend that the woman would die, but after petitioner and her friend left the apartment, the woman did die of asphyxiation.
Petitioner was not arrested for this offense until March 1984, while she was on probation in Bronx county for an intervening *663 offense. Until her arrest here, petitioner was unaware that the 1981 victim had died.
The administrative record consistently demonstrates petitioner’s genuine understanding of and sincere remorse for the harm her criminal acts caused. (Id. at 308.) By pleading guilty before the Bronx County Supreme Court, she immediately took full responsibility for those acts and has amassed outstanding accomplishments in prison programs and unanimous endorsements from prison officials and staff.
Petitioner expresses constant guilt and shame concerning her criminal acts and their consequences. Both parole and correction officers recognize petitioner’s understanding that her years of drug abuse have caused undue pain and suffering to her elderly victim and to the victim’s family and petitioner’s family as well. “[B]ecause of her abiding remorse for her offense,” she consistently finds ways to “give back somehow, for what was taken” and excels at working with emotionally challenged prisoners unable to function in the mainstream prison population. (Verified petition, exhibit N, at 11.) Having completed all prescribed therapeutic programs for her own rehabilitation, she also has completed educational and vocational programs to enable her to provide tutoring, mental health and medical services to other inmates, and to provide veterinary services and training to seeing eye dogs and explosives detection dogs. She also uses the dogs to provide therapy and comfort to disturbed and infirm inmates. The prison’s mental health staff have relied on her to motivate their patients and improve the patients’ morale, because she “is very caring for the inmates” and “will always go out of her way to help others.” (Id.; exhibit J, at 13.)
The staff call upon petitioner’s communication skills, “a valuable asset” (id.; exhibit N, at 21), to negotiate and control the conflicts involving inmate patients that the staff themselves find most difficult and stressful, because petitioner shows “empathy, genuine caring, and responsibility in her daily dealings with patients who are in crisis and can be unpredictable.” (Id. at 6.) She also “displays compassion, wisdom and courage . . . and takes on the ‘special cases’ which sometimes comes at the behest of the Superintendent.” (Id. at 11.) “Her work with psychiatric patients ... is legend; if a resident is problematic, Ms. Coaxum is the one we look to to work with her” (id. at 12).
Yet four times since the minimum 15 years of petitioner’s sentence elapsed, the Board of Parole has seen fit not to allow this woman to contribute her caring, kindness, patience, *664 sensitivity, and skills to her family and the community outside the prison. The record reveals a family who visits her faithfully, an elderly mother who “needs her,” devoted children who deserve the mother they have been denied, and young grandchildren who need their grandmother’s care. (Id. at 18.)
It would be expected that anyone who has encountered this repeated rejection by the Board would give up and regress. The fact that petitioner has not done so attests above all to the truly reformed person she is, dedicating herself to helping others as a means of atoning for her crime.
It also would be expected that respondent would present another side to the story petitioner presents, but respondent does not. While the above excerpts are only representative examples, there is no other side to her story. It is undisputed. (CPLR 409 [b]; Chadbourne & Parke, LLP v AB Recur Finans, 18 AD3d 222 [1st Dept 2005]; Matter of 10 W. 66th St. Corp. v New York State Div. of Hous. & Community Renewal, 184 AD2d 143, 148 [1st Dept 1992]; Matter of Eck v City of Kingston Zoning Bd. of Appeals, 302 AD2d 831, 832 [3d Dept 2003]; Matter of Friends World Coll. v Nicklin, 249 AD2d 393, 394 [2d Dept 1998]; see Matter of Scotto v Giuliani, 280 AD2d 315 [1st Dept 2001]; Matter of Young v Costantino, 281 AD2d 988 [4th Dept 2001]; Matter of Davis v Peterson, 254 AD2d 287 [2d Dept 1998]; Matter of Laird v Town of Montezuma, 191 AD2d 986, 987 [4th Dept 1993].)
II. Venue
The Board of Parole convened for petitioner’s hearing and rendered its decision on January 25, 2005 in Westchester County. In a proceeding pursuant to CPLR 7803, such as this one, CPLR 506 (b) provides for venue on three bases applicable here: (1) “where the respondent made the determination complained of’; (2) “where the material events otherwise took place”; or (3) “where the principal office of the respondent is located.” (CPLR 506 [b].) Here, respondent made its determination denying parole in Westchester county and maintains its principal office in Albany county. Petitioner does not dispute these unassailable facts, but relies on the undisputed material events that occurred in Bronx county.
Petitioner is incarcerated under a sentence imposed by the Bronx County Supreme Court for the crime she committed in May 1981 in Bronx county. As discussed extensively below, respondent relied primarily on this offense in denying her parole. In the Board of Parole’s view, the elements and circumstances of this offense were the events material to its determination.
*665 In fact, in support of respondent’s motion to change venue, respondent points to no material events in Westchester or Albany county, other than the Board of Parole’s determination in Westchester county. As the moving party, respondent bears the burden to establish that petitioner’s selection of venue is improper, warranting a change of venue to Westchester or Albany county. (CPLR 506 [b]; 510 [1]; Rivera v Jensen, 307 AD2d 229 [1st Dept 2003]; Clarke v Ahern Prod. Servs., 181 AD2d 514, 515 [1st Dept 1992]; see Collins v Glenwood Mgt. Corp., 25 AD3d 447, 449 [1st Dept 2006]; Parker v Calamaras, 269 AD2d 149 [1st Dept 2000].) Respondent’s grounds for changing venue, however, would equate CPLR 506 (b)’s separate provision for venue “where the material events otherwise took place,” with the provision for venue “where the respondent made the determination complained of.” Limiting where “material events otherwise took place” to where “respondent made the determination” would render the former, separate basis for venue redundant, superfluous, meaningless, and ineffective, contrary to basic principles of statutory construction. (CPLR 506 [b] [emphasis added]; see McKinney’s Cons Laws of NY, Book 1, Statutes § 144.)
Moreover, CPLR 506 (b) contains four exceptions to its provisions basing venue in any of the three locations specified above. Those exceptions do limit venue to a single location in proceedings against particular bodies or officers. Had the Legislature intended to limit venue to one or two locations, rather than three alternatives, in proceedings against the New York State Board of Parole, the Legislature would have so specified in a similar exception. (Statutes § 240.) The absence of such an exception further supports an intent that the three alternatives be separate alternatives. (Matter of Knight v New York State Dept. of Envtl. Conservation, 110 Misc 2d 196, 203-204 [Sup Ct, Monroe County 1981].) Consistent with that interpretation, none of the authority applying section 506 (b) distinguishes parole determinations from the proceedings to which the “material events” alternative applies or excludes parole determinations from its ambit. (See Matter of Browne v New York State Bd. of Parole, 10 NY2d 116, 122 [1961]; Matter of Hawkins v Coughlin, 132 Misc 2d 45, 47 [Sup Ct, Queens County 1986], affd 132 AD2d 381 [2d Dept 1987], affd 72 NY2d 158 [1988].)
The Board of Parole’s determination is a material event that took place in Westchester county. Venue would be proper there. (Matter of Howard v New York State Bd. of Parole, 5 AD3d 271, *666 272 [1st Dept 2004]; see County of Nassau v State of New York, 249 AD2d 353, 354 [2d Dept 1998].) Nevertheless, “material events otherwise took place” in Bronx county: petitioner’s offense, its impact on the victim, petitioner’s guilty plea, and the court’s sentence. (CPLR 506 [b] [emphasis added].) Particularly where the Board’s determination itself relied so extensively on that offense and the potential life sentence, respondent establishes the Bronx county events as material. (Matter of Schwartz v Dennison, NYLJ, May 8, 2006, at 19, col 1 [Sup Ct, NY County]; Matter of Crimmins v Dennison, 12 Misc 3d 725 [Sup Ct, NY County 2006]; Matter of Weinstein v Dennison, 7 Misc 3d 1009[A], 2005 NY Slip Op 50518[U] [Sup Ct, NY County 2005] ; Matter of Key v New York State Div. of Parole, 10 Misc 3d 1072[A], 2006 NY Slip Op 50048[U] [Sup Ct, Kings County 2006] .) They are the events from which petitioner’s incarceration and the determination denying her request for release from incarceration, the official actions she challenges, arose. (Matter of Brothers of Mercy Nursing & Rehabilitation Ctr. v DeBuono, 237 AD2d 907, 908 [4th Dept 1997]; Ward v Sise, 127 Misc 2d 32, 33 [Sup Ct, Erie County 1984]; Menella v Office of Ct. Admin. of State of N.Y., 125 Misc 2d 63, 65 [Sup Ct, Kings County 1984].)
Howard v New York State Bd. of Parole (5 AD3d at 272), upholding venue in a county other than where the parole determination occurred or the respondent’s principal office was located, is not to the contrary. In dictum inessential to that holding, the court does remark that the county where the proceeding would continue nonetheless was “an improper county for venue.” (Id.) The decision contains no mention, however, of any material events other than the determination complained of or where those other events occurred, let alone what events were material to the respondent’s determination or where they occurred. Thus, even assuming the petitioner’s trial and sentence occurred in the venue he selected, Howard v New York State Bd. of Parole does not suggest that if, as here, the events that respondent considered material to its determination occurred in petitioner’s selected venue, it would be improper. Since the First Department’s decision poses no bar to the venue selected here, and respondent has failed to meet its burden to overcome the presumption that venue is petitioner’s choice, the court denies respondent’s motion to change venue. (CPLR 506 [b]; 510 [1]; e.g., Johanson v J.B. Hunt Transp., Inc., 15 AD3d 268, 270 [1st Dept 2005]; Clarke v Ahem Prod. Servs., 181 AD2d at 515.)
*667 III. The Board of Parole’s Decision
The Board of Parole’s decision denied petitioner parole for the following reasons.
“You are serving sentences of 15 to Life for Murder 2nd and 5 to 15 for Robbery 1st.
“Your criminal act involved you and another (unapprehended) murdering your approximately 80 year old female victim. Her hands and feet were tied and there was a cloth tied around her neck. She was strangled to death. We note, at the time you committed this crime you were about 28 years of age. Even after committing this crime you on or about 6/10/83 committed the crime of Att. Burglary 2nd by entering your victim’s residence and taking money.
“You’ve programmed well, have an excellent disciplinary record and have much community support.
“However your criminal act was extremely brutal and this panel feels that even though you’ve spent significant time in prison and have other significant positive factors mentioned above, we feel that your criminal act was so heinous that to release you at this time would depr[e]cate the seriousness of it and undermine respect for the law.” (Verified petition, exhibit A, at 2; answer 1115, exhibit B, at 2.)
This decision lacks a rational basis on several grounds. (Matter of Silmon v Travis, 95 NY2d 470, 476 [2000]; Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 77 [1980]; Wallman v Travis, 18 AD3d at 307, 309-310; Matter of Vargas v New York State Bd. of Parole, 20 AD3d 738, 739 [3d Dept 2005].)
A. Failure to Consider the Required Factors
The Board of Parole must consider Executive Law § 259-i (2) (c) (A)’s statutory factors, such as petitioner’s institutional disciplinary record, involvement in institutional programs, and plans upon release, in addition to the circumstances surrounding the criminal offense for which she currently is incarcerated. (Matter of Anthony v New York State Div. of Parole, 17 AD3d 301 [1st Dept 2005]; Matter of Garcia v New York State Div. of Parole, 239 AD2d 235, 238 [1st Dept 1997]; Vargas v New York State Bd. of Parole, 20 AD3d at 739; Matter of Vasquez v State of N.Y. Exec. Dept., Div. of Parole, 20 AD3d 668, 669 [3d Dept 2005].) The Board was presented with this evidence: petitioner’s remarkable, spotless disciplinary record, spanning more than 21 years; her exemplary academic, vocational, and therapeutic *668 achievements and contributions in prison programs; and her job offer and mutual care and support among her mother, children, and grandchildren outside the prison. Yet the Board did not base its decision on a single one of these factors. While parole is not to be granted merely as a reward for petitioner’s positive conduct and rehabilitative achievements while incarcerated, these factors are to be considered. (Executive Law § 259-i [2] [c] [A]; Silmon v Travis, 95 NY2d at 476-477; King v New York State Div. of Parole, 83 NY2d at 790; Garcia v New York State Div. of Parole, 239 AD2d at 238; Matter of Friedgood v New York State Bd. of Parole, 22 AD3d 950 [3d Dept 2005].) Surely actual consideration of factors means more than acknowledging that evidence of them was before the Board.
Even were the Board’s fleeting reference to petitioner’s positive “programming,” disciplinary record, and community support considered a perfunctory discussion, it is insufficient because these factors are of “critical significance” in evaluating her acceptance of responsibility for the 1981 crime, her rehabilitation, and her readiness for release. (Wallman v Travis, 18 AD3d at 308.) The Board’s decision denying petitioner parole is a conclusion that she is not rehabilitated and ready for release, a conclusion unsupported by any factual finding and thus irrational. (Id. at 308-309; Friedgood v New York State Bd. of Parole, 22 AD3d at 951.) As the correction sergeant who supervised her for 10 years concluded: “If any inmate has made a turn around, it is Jean Coaxum.” (Verified petition, exhibit N, at 12.)
After considering all the factors relevant to the individual inmate, the Board then may accord greater or lesser weight or emphasis to different factors. The decision making is a process of determining which factors outweigh others: a balancing process. (Anthony v New York State Div. of Parole, 17 AD3d at 301; Matter of Kirkpatrick v Travis, 5 AD3d 385 [2d Dept 2004]; Matter of Wright v Travis, 284 AD2d 544 [2d Dept 2001]; Matter of Guerin v New York State Div. of Parole, 276 AD2d 899, 900 [3d Dept 2000].) Here, however, the Board’s decision reveals it accorded no weight and no emphasis whatsoever to any factor apart from the seriousness of petitioner’s offense. (Friedgood v New York State Bd. of Parole, 22 AD3d at 951; see Anthony v New York State Div. of Parole, 17 AD3d at 301; Matter of Torres v New York State Div. of Parole, 300 AD2d 128, 129 [1st Dept 2002]; Garcia v New York State Div. of Parole, 239 AD2d at 239; Vasquez v State of N.Y. Exec. Dept., Div. of Parole, 20 AD3d at 669.)
*669 In hearing and determining petitioner’s request for parole, the Board responded to her statement, “I’m no longer that person in 1984”: “I’m sure you’re not” (verified petition, exhibit C, at 27). “I don’t think we could ask an inmate to do more than you did. There is nothing else you can do, and you can’t change what you did. I know it’s a difficult position to be in.” (Id. at 30.) By admitting that petitioner could not have done and could not in the future do anything more or differently to lend greater weight to the factors other than her offense and tip the Board’s decision to a conclusion in her favor, the Board demonstrates that those considerations did not weigh to any degree in its decision making; the Board balanced nothing. (Torres v New York State Div. of Parole, 300 AD2d at 129; Garcia v New York State Div. of Parole, 239 AD2d at 239; Matter of Klein v New York State Div. of Parole, 202 AD2d 319, 320 [1st Dept 1994]; Guerin v New York State Div. of Parole, 276 AD2d at 900.) If this admission and the absence of any weight or emphasis accorded to any other factors otherwise revealed by the decision do not amount to “insufficient” weight on those other factors or to “excessive weight” (Matter of Ramirez v New York State Div. of Parole, 309 AD2d 574 [1st Dept 2003]), or “undue emphasis” on the seriousness of petitioner’s offense, nothing does. (Matter of Stasinski v Travis, 18 AD3d 1106, 1107 [3d Dept 2005]; see Wallman v Travis, 18 AD3d at 307-308; Matter of Morel v Travis, 18 AD3d 930, 931 [3d Dept 2005].) When left with the seriousness of petitioner’s offense as the exclusive factor considered and sole basis for the Board’s conclusion of nonrehabilitation and unreadiness for release, the conclusion is irrational (Wallman v Travis, 18 AD3d at 310-311; Friedgood v New York State Bd. of Parole, 22 AD3d at 951), and contrary to the statutory discretion authorized. (Wallman v Travis, 18 AD3d at 307-308.)
After all, the whole purpose of New York’s parole system is, at minimum, to hold out “the possibility of parole.” (Russo v New York State Bd. of Parole, 50 NY2d at 75; see Greenholtz v Inmates of Neb. Penal & Correctional Complex, 442 US 1, 11 [1979].) By relying solely on the unchangeable factor, the severity of petitioner’s 1981 offense, and declaring that petitioner could not have done and could not in the future do anything more or differently to obtain a decision granting her parole, the Board denies her even that possibility. (Verified petition, exhibit C, at 30; see Matter of Trobiano v State of N.Y. Div. of Parole, 285 AD2d 812, 813 [3d Dept 2001].)
*670 Consistent with the statutory objectives of rehabilitation and readiness for release, moreover, the Board was mandated to determine whether petitioner, if released, would “remain at liberty without violating the law” and whether her release was “not incompatible with the welfare of society.” (Executive Law § 259-i [2] [c] [A]; Silmon v Travis, 95 NY2d at 476; King v New York State Div. of Parole, 83 NY2d at 790; Garcia v New York State Div. of Parole, 239 AD2d at 238.) Nowhere does the Board’s decision reflect an assessment whether petitioner posed a danger to society or would repeat her criminal conduct. (Silmon v Travis, 95 NY2d at 477.) Certainly if the Board had evaluated petitioner’s total reform and rehabilitation, the Board would have determined that this 52-year-old grandmother posed no threat, but realistically promised to contribute to society’s welfare and was ready to rejoin the community outside prison. (Id. at 478; Friedgood v New York State Bd. of Parole, 22 AD3d at 951.) In fact, if ever she is to make such a contribution, now is the time. Without undertaking this required evaluation, the Board’s determination not to release petitioner was arbitrary. (Silmon v Travis, 95 NY2d at 476-477.)
Petitioner has achieved the loftiest goals of New York’s statutory penal and corrections system: reform and rehabilitation. (Id. at 477.) To deny her parole supervision as the Board did is to deny that the system contains any “rehabilitative component” or parole supervision and to contravene the statutory goals. (Id.)
B. Consideration of Impermissible Factors
Instead of undertaking the evaluation required, the Board impermissibly considered the heinous nature of the offense petitioner was serving a sentence for, such that the offense did not, no matter what the circumstances since that offense, warrant a sentence of 15 years to life: the sentence the court imposed. (King v New York State Div. of Parole, 83 NY2d at 791; Quartararo v New York State Div. of Parole, 224 AD2d at 266; see Penal Law § 70.00 [3] [a] [i].) Obviously the sentence that the seriousness of the offense warranted and that was consistent with unwavering respect for the law was the determination of the Legislature and the sentencing court, not the Board of Parole. (Id.; Guerin v New York State Div. of Parole, 276 AD2d at 901.)
The Board may consider the seriousness of petitioner’s offense, to be sure, but that consideration is a far cry from determining the sentence warranted. (Ramirez v New York State *671 Div. of Parole, 309 AD2d at 574; Garcia v New York State Div. of Parole, 239 AD2d at 238; Vasquez v State of N.Y. Exec. Dept., Div. of Parole, 20 AD3d at 669; Matter of Howithi v Travis, 19 AD3d 727 [3d Dept 2005].) A determination of how much incarceration is enough is also central to the Board’s function, but only in the context of the statutory factors, a context absent here, and not in the abstract or in a vacuum, as here. The Board’s unjustifiable, exclusive reliance on the severity of petitioner’s offense, as discussed above, exceeds its administrative discretion authorized by statute and thus contravenes that statutory scheme. (Wallman v Travis, 18 AD3d at 307-308.) In determining that under no circumstances — no matter how unblemished and positive her prison record since the sentence was imposed or how concrete her plans to support herself and her family and contribute to her community when released— would the Board accept a 15- or even 22-year sentence for petitioner’s offense, the Board not only abandoned the statutory criteria, it also usurped the functions of the Legislature and the sentencing court.
The Board’s decision reflects that it (1) determined the minimum sentence the court imposed to be of no consequence and (2) viewed a 15 years to life sentence to be the same as a 22 years to life sentence or simply a life sentence. The 15 years to life sentence imposed, however, reflects the court’s determination that under circumstances of reform and rehabilitation, consistent with the statutory scheme, 15 years is sufficient. Ignoring this sentence that the court imposed, the Board effectively undertook an unauthorized resentencing (Wallman v Travis, 18 AD3d at 307), substituting the Board’s own opinion of the sentence warranted by petitioner’s crime for the court’s determination. (Id. at 311; see Silmon v Travis, 95 NY2d at 476.)
Again, while the Board must determine whether petitioner’s release would “so deprecate the seriousness of [her] crime as to undermine respect for law” (Executive Law § 259-i [2] [c] [A]), the Board may not do so by relegating to itself the determination of the sentence warranted. The Board must support its conclusion under Executive Law § 259-i (2) (c) (A) with consideration of the statutory factors other than the seriousness of her crime, the factors bearing on parole, not on the penalty for the offense determined by the Legislature and the court. (Silmon v Travis, 95 NY2d at 477-478; King v New York State Div. of Parole, 83 NY2d at 790-791; Wallman v Travis, 18 AD3d at 307-308, 310-311; Friedgood v New York State Bd. of Parole, *672 22 AD3d at 951; see Garcia v New York State Div. of Parole, 239 AD2d at 238-239.)
All the relevant facts surrounding petitioner’s crime were before the court when it sentenced petitioner, have not changed since then, and cannot change. (Verified petition, exhibit C, at 30; see Trobiano v State of N.Y. Div. of Parole, 285 AD2d at 813.) Therefore, the Board must consider the significant factors that can change: petitioner’s rehabilitation and readiness to make amends for her past actions through service and contributions to her family and to society. (Executive Law § 259-i [2] [c] [A].) The Board has not made even a fleeting reference to why or how petitioner will be more ready in the future. To the contrary, the Board has admitted that she is a different person than when she was sentenced and that she never will be any more ready to return to society. The Board’s conclusion is thus nothing more than its disagreement with the court’s sentence. Nowhere has the Board even hinted at an explanation of how granting petitioner supervised release within the full range of her sentence would “undermine respect for law.” (Id.) This failure to accept the court’s sentence, by which the Board is bound, as well as to recognize the goals of New York’s penal and corrections system, is a determination that itself undermines respect for the law.
IV Disposition
Consequently, the court grants the petition, annuls respondent’s decision denying petitioner release to parole supervision, and remands petitioner’s request for parole to respondent, which within 30 days shall hold a new hearing before a different panel than was convened January 25, 2005, where respondent shall consider the statutorily required factors. (CPLR 7803 [1], [3]; 7806; Executive Law § 259-i [2] [a], [c] [A]; King v New York State Div. of Parole, 83 NY2d at 790; Wallman v Travis, 18 AD3d at 311; Quartararo v New York State Div. of Parole, 224 AD2d at 266; Friedgood v New York State Bd. of Parole, 22 AD3d at 951.) Within 14 days after the hearing, respondent shall issue a decision, in nonconclusory terms, on petitioner’s release to parole supervision. (CPLR 7803 [1], [3]; 7806; Executive Law § 259-i [2] [a], [c] [A]; Friedgood v New York State Bd. of Parole, 22 AD3d at 951.)