[854 NYS2d 348]

In the Matter of Leopold Siao-Pao, Appellant, v Robert Dennison, as Chairman of the New York State Division and Board of Parole, Respondent.

First Department, March 11, 2008

## APPEARANCES OF COUNSEL

*Steven N. Feinman,* White Plains, for appellant.

*Leopold Siao-Pao,* appellant pro se.

*Andrew M. Cuomo, Attorney General,* New York City (*Robert C. Weisz* and *Michelle Aronowitz* of counsel), for respondent.

## OPINION OF THE COURT

BUCKLEY, J.

Petitioner pleaded guilty in 1982 to murder in the second degree (felony murder) and robbery in the first degree, and was sentenced to concurrent prison terms of 18 years to life and $8^{1}/_{3}$ to 25 years, respectively, for his participation in the robbery of two people, one of whom petitioner fatally stabbed. Petitioner admitted during his plea allocution that he and two accomplices intended to commit a robbery. One acted as a lookout, while petitioner, displaying a knife, and codefendant Miguel Molina, wielding a baseball bat, approached a man and a woman in a park and demanded their money. After petitioner and Molina obtained the couple's possessions, Molina made a remark about the manner in which the man was looking at him, and began to strike him with the bat. Petitioner stabbed the man twice and then fled with his accomplices; the man subsequently died of his wounds. An autopsy revealed two stab wounds: "anterior chest wall and anterior abdominal wall involving lung, heart-hemorrhage." During his interview for the presentence report, petitioner claimed that he never intended to stab the victim, but rather inadvertently did so while trying to stop Molina from beating the man. Petitioner declined to make a statement at sentencing.

According to the presentence report, petitioner evinced behavioral problems in school when he was nine years old, and was therefore sent to a therapeutic community. Five years later, he was discharged from the therapeutic community for a pattern of acts including breaking into the health clinic and stealing liquor, throwing rocks at a car, threatening and striking a counselor, and stealing a community car on two occasions. He was sent to Florida to live with his oldest sister, but continued to have problems. Shortly thereafter, he returned to New York to stay with a family friend, whose main problem with petitioner was that he refused to attend school. In 1978, he was charged with criminal trespass in the fourth degree, for which he received a conditional discharge, and in 1980 he was charged with a violation of the Vehicle and Traffic Law, for which he was sentenced to time served.

Petitioner sought parole supervision in 1999, 2001, and 2003, but was denied each time. In 2005, he appeared before the Parole Board for the hearing at issue on this appeal. He expressed remorse for what he had done, but nevertheless told the Board that he never thought anyone would get hurt during the robbery and that he had unintentionally stabbed the victim while trying to prevent his codefendant from beating the man. Since his last appearance before the Board, petitioner had maintained a clean disciplinary record, worked as a paralegal in the prison law library, and hoped to pursue a career as a tractor trailer driver and obtain housing through a community program, if placed on parole.

After conferring, the Board rendered its decision:

"AFTER A REVIEW OF THE RECORD AND THIS INTERVIEW, PAROLE IS DENIED. THE INSTANT OFFENSE, MURDER IN THE SECOND DEGREE AND ROBBERY IN THE FIRST DEGREE, OCCURRED WHEN DURING THE COMMISSION OF A ROBBERY, YOU CAUSED THE DEATH OF A MALE VICTIM BY STABBING HIM WITH A KNIFE. THIS CRIME REPRESENTS AN ESCALATION OF YOUR ANTI-SOCIAL BEHAVIOR. YOUR INSTITUTIONAL ACHIEVEMENTS AND POSITIVE DISCIPLINARY RECORD ARE NOTED AND CONSIDERED. THE BOARD FINDS YOUR PROPENSITY FOR VIOLENCE AND INDIFFERENCE FOR THE LAW AS AN INDICATOR OF YOUR UNSUITABILITY FOR RELEASE AT THIS TIME."

The Parole Board has substantial discretion in making parole determinations, provided that it follows the standards set forth in the Executive Law (*see Matter of King v New York State Div. of Parole*, 83 NY2d 788, 790 [1994]). Pursuant to Executive Law § 259-i (2) (c) (A), the Board must consider the inmate's institutional record ("including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates"), release plans, performance in work release programs, victim impact statements, and any deportation orders. However, the statute specifically states:

"Discretionary release on parole shall not be granted merely as a reward for good conduct or ef-

ficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law" (*id.*).

Where, as here, the court, and not the Board, has set the minimum period of imprisonment, the Board must also take into account the seriousness of the offense and the inmate's prior criminal record (*see Matter of King*, 83 NY2d at 790). The Board need not expressly discuss in its determination each of the guidelines, or give equal weight to each factor (*see Matter of King v New York State Div. of Parole*, 190 AD2d 423, 431 [1993], *affd* 83 NY2d 788 [1994]). In fact, "the weight to be accorded to each of the factors lies solely within the discretion of the Parole Board" (*Matter of Garcia v New York State Div. of Parole*, 239 AD2d 235, 239 [1997]). The dissent acknowledges those principles, but nevertheless faults the Board for failing to provide explanatory detail and for according too much weight to the severity of petitioner's offenses for which he is currently incarcerated.

The dissent also appears to credit petitioner's assertion that he only accidentally injured the victim, which the Board rejected. Such credibility determinations are generally to be made by the Board (*see Matter of Bratton v New York State Bd. of Parole*, 23 AD3d 879 [2005]), and to the extent petitioner asks us to review his credibility on the cold record, we may also take judicial notice of a prior proceeding wherein the Second Department found him "guilty of lying or providing incomplete, misleading, and/or false statements or information" (*Matter of Siao-Pao v Mazzuca*, 288 AD2d 230 [2001]). In any event, there is record support to conclude that petitioner was not completely forthcoming.

Petitioner now hinges his claim of unintentional killing on the newly minted theory that the victim was stabbed only once, evidently conceding that two fatal knife wounds imply an intentional act. In addition, although he maintained at his plea that he did not realize he had stabbed the man until he noticed blood on the blade after fleeing the scene, by the time of the hearing he denied there was any blood on the knife. Petitioner argues that the Board's denial of parole was based, at least in part, on an incorrect belief that there were two knife wounds; however, he admitted during his plea and the first parole hear-

ing that he had stabbed the victim twice, and the autopsy report confirmed two stab wounds. Petitioner conceded that he was the only one who possessed a knife during the robbery, and as one of the Board commissioners pointed out at the hearing at issue, the possibility of backing up a threatening display with actual use is the whole purpose of bringing a deadly weapon to a crime.

The dissent characterizes the female victim's grand jury testimony as corroborating petitioner's account that he attempted to prevent codefendant Molina from beating the male with a bat, and in the process accidentally stabbed the man. However, in contrast to petitioner, who asserts that he physically intervened after the couple had been relieved of their possessions, the woman testified that petitioner and the other accomplice tried to "calm [Molina] down and get to the business at hand." She further stated that, after the couple turned over their money and jewelry, Molina raised his bat in a threatening manner, but she did not see him strike her friend. Thus, her testimony tends to contradict petitioner's version that he interposed himself to stop an ongoing beating.

Indeed, if, as petitioner claims, he was merely attempting to restrain his codefendant, one would expect to find a knife wound, or at least an injury, on the codefendant, rather than on the person petitioner maintains he was trying to protect. Also lacking is any indication of beating injuries to petitioner or the victim. In addition, the autopsy report of knife wounds to the "anterior chest wall and anterior abdominal wall involving lung, heart-hemorrhage" indicates deep thrusts to vital organs, which supports an inference of intentional stabbing, rather than superficial slicings, which would be more consistent with inadvertence.

Considering all of those factors, the Board could have determined that petitioner was not being truthful or taking full responsibility for his actions.

The dissent favorably cites petitioner's assignment as a paralegal in the prison law library, but does not take into account a Third Department determination that he rendered unauthorized legal assistance in that capacity (see Matter of Siao-Pao v Selsky, 274 AD2d 698 [2000], lv denied 95 NY2d 767 [2000]). In any event, we have previously held that "it was not improper for the Board to base its denial on the severity of the crime, despite the fact that the petitioner therein also had an exemplary record" (Matter of Walker v Travis, 252 AD2d 360, 362 [1998]).

Finally, this Court (with 10 different Justices participating) has found two prior denials of parole to petitioner, worded similarly to the instant denial, to have properly factored in the guidelines set forth in Executive Law § 259-i (*see Matter of Siao-Pao v New York State Bd. of Parole, Appeals Unit*, 29 AD3d 353 [2006], *lv denied* 7 NY3d 710 [2006]; *Matter of Siao-Pao v Travis*, 5 AD3d 150 [2004], *lv denied* 3 NY3d 603 [2004]). The dissent does not explain how the Board's interpretation of identical facts has suddenly become erroneous or its weighings disproportionate, or why a more detailed discussion in the determination is now mandated by the Executive Law.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered September 22, 2006, which denied the petition to annul the Board's determination denying parole, should be affirmed, without costs.

SWEENY, J. (dissenting). The determination of respondent Board appears to rely almost exclusively on the seriousness of the offenses for which petitioner was incarcerated, to the exclusion of the additional considerations required by Executive Law § 259-i (2) (c) (A). There is virtually no discussion of the statutory factors that must be taken into consideration (§ 259-i [1] [a]; [2] [c]), which would permit this Court to conduct a meaningful review of the record to determine if the Board's decision was rational.

Petitioner was 19 years old when he participated in a 1981 robbery in which a victim was stabbed twice, resulting in the victim's death. Petitioner pleaded guilty to murder in the second degree (felony murder) and robbery in the first degree, and in August 1982 he was sentenced to concurrent terms of 18 years to life and 8$^1$/$_3$ to 25 years, respectively. During his plea allocution, petitioner explained that while he willingly participated in the robbery, the victim was accidentally stabbed when petitioner tried to intervene as another perpetrator started to beat the victim with a bat. This account was corroborated by the grand jury testimony of a second victim, and was not disputed by the prosecutor. At the time of petitioner's appearance before the Parole Board, he had been incarcerated for 23 years and denied parole on three prior occasions.

Petitioner's institutional record during his incarceration has been favorable and included his assignment as a paralegal in the facility's law library. Petitioner expressed remorse for his conduct and its consequences and his involvement with the

criminal justice system prior to his 1981 criminal activities was minor and was not characterized by acts of violence.

The Parole Board denied petitioner's application and determined that his criminal actions represent "AN ESCALATION OF YOUR ANTI-SOCIAL BEHAVIOR. YOUR INSTITUTIONAL ACHIEVEMENTS AND POSITIVE DISCIPLINARY RECORD ARE NOTED AND CONSIDERED. THE BOARD FINDS YOUR PROPENSITY FOR VIOLENCE AND INDIFFERENCE FOR THE LAW AS AN INDICATOR OF YOUR UNSUITABILITY FOR RELEASE AT THIS TIME."

Petitioner commenced the instant CPLR article 78 proceeding to challenge the determination, and the court denied the petition. The court found, inter alia, that the Parole Board's determination had a rational basis.

Although the Parole Board enjoys considerable discretion in determining whether to grant parole, it must employ the criteria set forth in the Executive Law (see § 259-i [1] [a]; [2] [c]). The Board need not itemize each factor it considered, nor give equal weight to all factors, but it must take the statutory factors into consideration (Matter of King v New York State Div. of Parole, 190 AD2d 423, 431 [1993], affd 83 NY2d 788 [1994]). While no ritualistic language need be used to demonstrate that each of the statutory factors was considered, some factual basis for the Board's conclusions needs to be stated in the decision. This is especially important here, as the Board made no reference to any of petitioner's efforts in prison since his last hearing, thus ignoring any progress he may have made. Notwithstanding the Parole Board's passing pro forma reference to petitioner's institutional achievements and favorable disciplinary record, the Board did not set forth any factual basis to support its conclusion that petitioner has a continuing propensity for violence and a manifest indifference to the law.

Because of the lack of factual specificity in the decision, we cannot adequately determine if the Parole Board properly considered and discussed the statutory factors in arriving at its determination (see Matter of Wallman v Travis, 18 AD3d 304 [2005]). Its decision, therefore, cannot be upheld, and the matter must be remanded for further proceedings.

FRIEDMAN and WILLIAMS, JJ., concur with BUCKLEY, J.; ANDRIAS, J.P., and SWEENY, J., dissent in a separate opinion by SWEENY, J.

Order and judgment (one paper), Supreme Court, New York County, entered September 22, 2006, affirmed, without costs.