10-4480-pr
Robles v. Dennison

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 23rd day of November, two thousand eleven.

Present:     ROSEMARY S. POOLER,
             BARRINGTON D. PARKER,
             RAYMOND J. LOHIER, JR.,
                  *Circuit Judges*.

_____

RICHARD ROBLES,

                        *Petitioner-Appellant*,

             -v.-                              10-4480-pr

RICHARD DENNISON, CHAIRMAN, NEW YORK STATE
DIVISION OF PAROLE,

                        *Respondent-Appellee*.

_____

Appearing for Appellant:     Robert J. Boyle, New York, N.Y.

Appearing for Appellee:      Jodi A. Danzig, Assistant Attorney General; Barbara D.
                             Underwood, Solicitor General; Roseann B. MacKechnie, Deputy
                             Solicitor General (of counsel) *for* Eric T. Schneiderman, Attorney
                             General of the State of New York, New York, N.Y.

Appeal from the United States District Court for the Western District of New York (Bianchini, *M.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Robles appeals from the judgment of the district court denying habeas relief under 28 U.S.C. § 2254 and granting a certificate of appealability ("COA") on five issues relating to Robles's claims that his denials of parole in 2002, 2004, and 2006 violated his rights to procedural and substantive due process. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

We review a district court's denial of a petition for a writ of habeas corpus de novo, *Bell v. Miller*, 500 F.3d 149, 154 (2d Cir. 2007), but review its determination of facts for clear error, *Thibodeau v. Portuondo*, 486 F.3d 61, 64 (2d Cir. 2007). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may grant habeas relief with respect to a claim that was adjudicated on the merits in state court only if the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

We affirm the judgment of the district court because the decision of the state court was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

There is no constitutional right to parole, but a state may create a protected liberty interest in parole through its statutes and regulations. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Where such an interest exists under state law, and parole is denied, a prisoner is entitled to an opportunity to be heard and a statement of the reasons why parole was denied. *Id.* at 16. Robles received at least this much process for each of his parole denials. In each of the relevant proceedings, he was given a chance to be heard and provided with an explanation as to why parole was denied. For this reason, even if we assume, without deciding, that New York's parole system in 1963 created a liberty interest, Robles received all the process to which he was entitled.

As to Robles's substantive due process claim, even assuming that (1) there is a clearly established right against a parole denial for arbitrary or impermissible reasons, and (2) that Robles was denied parole based solely on the seriousness of his crimes, the parole denials in Robles's case were authorized under New York Executive Law § 259-i(2)(c)(A). They were not so clearly arbitrary or impermissible that the decision of the state court can be said to be an unreasonable application of "Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(2).

New York Executive Law Section 259-i, which governed Robles's parole determination, explicitly *requires* Parole Boards to consider the seriousness of the inmate's crime:

> Discretionary release on parole *shall not be granted merely as a reward for good conduct or efficient performance of duties while confined* but after considering if there is a

reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, *and that his release* is not incompatible with the welfare of society and *will not so deprecate the seriousness of his crime as to undermine respect for law*.

N.Y. Exec. Law § 259-i(2)(c)(A) (emphasis added). As the district court observed, "the Parole Board is permitted to ask itself whether the inmate has been incarcerated for a long enough period of time to punish him and vindicate the victims. . . . Thus, the Parole Board is . . . authorized to take a punitive or retributive factor into consideration, by asking whether the nature of the prisoner's crime *ever* makes release from incarceration to parole appropriate."

New York's courts have interpreted Section 259-i(2)(c)(A) to allow the denial of parole based solely on the severity of the offense of conviction, so long as there is "a showing of some aggravating circumstances beyond the inherent seriousness of the crime itself." *King v. New York*, 598 N.Y.S.2d 245, 251 (N.Y. App. Div. 1993). The district court appears to have understood the phrase "additional aggravating factor" to require an aggravating factor unrelated to the offense of conviction. Yet the Appellate Division, affirmed by the New York Court of Appeals, has explicitly stated that a serious offense may be the exclusive basis for denying parole if there were "significantly aggravating or egregious circumstances *surrounding the commission of the particular crime*." *Id.* (emphasis added) (citing *People ex rel. Thomas v. Superintendent of Arthur Kill Corr. Facility*, 508 N.Y.S.2d 564, 565 (N.Y. App. Div. 1986) (parole properly denied due to "extraordinarily serious and bizarre nature of the present offenses")), *aff'd*, 83 N.Y.2d 788 (N.Y. 1994).

Applying the standard in *King*, it is reasonable to conclude that the circumstances surrounding Robles's crimes would qualify as "significantly aggravating or egregious." Petitioner concedes that "'[s]eriousness of the offense' is a factor that the Parole Board must consider," but asserts that the Parole Board did not identify aggravating circumstances. This contention is not supported by the record. The 2002 parole denial, for example, recites the details of Robles's "vicious crime" in support of its decision:

> After a careful review, parole is again denied. . . . You illegally entered the female victim's apartment where you forced her to commit an act of oral sodomy on yourself. Subsequently, another female arrived. Both were tied with bed sheets and you stabbed and killed them. Your record reflects other criminal conduct on your part with a parole failure. Your overall conduct leads the panel to conclude your release would make a mockery of the criminal justice system, therefore, you are not an acceptable candidate for discretionary release. You[] were on parole supervision at the time you committed the instant offense.

The Board thus discussed and took into account the aggravating circumstances surrounding the murders in reaching its decision.

That it is unclear whether the 2002 Parole Board complied fully with the requirement to consider "the prisoner's educational and other achievements," *King*, 598 N.Y.S.2d at 251, does not render the parole denial arbitrary and capricious. Because the Parole Board lawfully could have determined that the seriousness of the offense outweighed the positive factors and was not

3

required to expressly discuss each factor in its determination, *see Garcia v. N.Y. State Div. of Parole*, 657 N.Y.S.2d 415, 418-19 (N.Y. App. Div. 1997), the denial of parole was not so clearly arbitrary and capricious that the state court can be said to have unreasonably applied Supreme Court law in affirming the decision of the Parole Board.

Petitioner also argues, under *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), that an individual's substantive due process rights may be violated even in the absence of an underlying right to life, liberty, or property, where executive action shocks the conscience. We need not decide whether this claim is properly before us because the decisions of the Parole Board clearly did not "shock the conscience" under the applicable Supreme Court precedent. Supreme Court cases "dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *County of Sacramento*, 523 U.S. at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1990)). To "shock the conscience," official conduct must be so "brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." *Id*. at 847 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)). Here, the Parole Board made decisions it was permitted to make under New York law, and the state court did not unreasonably apply the Supreme Court's "shock the conscience" standard in affirming the parole denial.

The final issue certified for our review relates to the government's nonexhaustion defense to Robles's challenges to his denials of parole in 2004 and 2006. Regardless of whether Robles's failure to exhaust his remedies was excusable, he would lose on the merits for the reasons described above. We therefore need not reach this question because "[a]n application for a writ of habeas corpus may be denied on the merits[] notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

We have reviewed the remainder of petitioner's arguments and found them to be without merit.

Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4