■ In the Matter of JAY A. WALLMAN, Appellant, v BRION D. TRAVIS, Chairman of the New York State Division of Parole, Respondent. [794 NYS2d 381]—

Order and judgment (one paper), Supreme Court, New York County (Joan A. Madden, J.), entered July 29, 2004, which, inter alia, denied and dismissed the petition seeking to annul the determination of the Parole Board denying petitioner's application for parole release, unanimously reversed, on the law, the facts and in the exercise of discretion, without costs, the petition granted and the matter remanded to the Parole Board for a de novo hearing on petitioner's application within 60 days of the date of this order.

Petitioner is a 64-year-old former attorney who began practicing law in New York in 1964. For most of that time, he practiced with a partner, Alan Wechsler, who ran the business of the firm and did estate and commercial work. Petitioner's primary business was trying medical malpractice cases. In the early 1990s, the firm suffered financial decline. Between June 1996 and June 1999, petitioner and Wechsler stole $4.7 million from their clients' escrow accounts. At least $2.7 million was used to pay the firm's operating expenses and approximately $900,000 was used by petitioner for his own personal expenses.

On June 29, 2000, petitioner pleaded guilty to one count of grand larceny in the first degree and two counts of grand larceny in the second degree. On August 14, 2000, he was sentenced to three concurrent terms of 3¹/₃ to 10 years. As a result of his felony convictions, petitioner was disbarred (see Matter of Wallman, 276 AD2d 40, 41 [2000]).

Ultimately, all but one of the firm's clients were reimbursed by the Lawyers' Fund for Client Protection. In addition, petitioner provided confessions of judgment to both the Lawyers' Fund and the one unpaid client, and simultaneously waived his interest in legal fees for any of his open cases.

While in prison, petitioner had a good disciplinary record and was granted an earned eligibility certificate pursuant to Correction Law § 805. He also qualified for a merit time certificate, which allowed him to appear before a Merit Board for parole release consideration after serving five sixths of his minimum term of imprisonment. The sentencing justice and the prosecutor wrote letters opposing petitioner's application for release. In November 2002, the Merit Board denied parole.

In June 2003, having served his minimum period of imprisonment, petitioner became eligible for regular parole consideration (Penal Law § 70.40 [1] [a]). He submitted numerous letters from persons supporting his request for parole and appeared at a hearing before the Parole Board held on June 17, 2003. In response to questions from Parole Board members at the hearing, petitioner attempted to explain the reasons for his misconduct and how much money he was obligated to repay. In addition, he expressed remorse for his acts and stated that he intended to fulfill his repayment obligations by obtaining employment if granted his release.

In its June 17, 2003 decision, the Parole Board denied petitioner's request for parole release and ordered that he be held for an additional 24 months. The Board determined that "there is a reasonable probability that you would not live and remain at liberty without violating the law and your release at this time is incompatible with the welfare and safety of the community."

The Board cited several factors for its decision, including that the crime involved "misappropriating $4.7 million in client funds," that the conduct took place over a long period of time, that the thefts were from "injured people seeking legal redress and compensation for their injuries" and involved violations of the victims' trust, and that petitioner had "limited insight into [his] ongoing crimes and victims of these crimes." Petitioner's administrative appeal of the Board's determination was denied on December 19, 2003.

Petitioner commenced the instant CPLR article 78 proceeding alleging, inter alia, that the Board's denial of parole was "irrational bordering on impropriety" and violated the pertinent parole regulations. He also contended that the evidence at the parole hearing failed to support the Board's conclusions and that the Second Department's holding in a case with almost identical facts (*Matter of Marino v Travis*, 289 AD2d 493 [2001]), mandated either petitioner's release or a de novo hearing before the Board.

Supreme Court, in the judgment appealed from, denied and

dismissed the petition. The court held that the Board relied on the proper standard and considered the appropriate factors in denying petitioner's release, such as the nature and seriousness of the crimes, petitioner's institutional record and release plans and his lack of insight and remorse. The court agreed with the Board's argument that petitioner's claimed remorse was mere "lip service," since petitioner had "attempted to downplay both the seriousness of his crime and his role" by stating that all but one of the victims "had been made whole" by the Lawyers' Fund and that his law partner was more culpable. Although the court acknowledged that a "rebuttable presumption favoring release" was created by petitioner's certificate of earned eligibility, it nevertheless concluded that the Board's determination that a reasonable probability existed that petitioner would not remain at liberty without violating the law and that his release would be incompatible with the welfare of the community was not irrational.

Finally, the court held that petitioner's reliance on the *Marino* case was misplaced, since although that case also involved the theft of client funds by an older attorney, since disbarred, there were significant differences in the cases such as the relative age and health of the attorneys, the amount of funds misappropriated and the number of victims involved.

On appeal, petitioner argues that Supreme Court erred in failing to conclude that the Board's denial of parole was "irrational bordering on impropriety." Specifically, he argues that the Board's conclusion that there was a reasonable probability that he would violate the law if released and that his release was incompatible with the welfare and safety of the community is refuted by the hearing record and was influenced by the Board's mischaracterization of the hearing testimony. He also contends that the alleged distinctions cited by the Board and court regarding the *Marino* case are factually incorrect. We agree.

The statutory scheme imposing the standard for discretionary release on parole is set out in detail in the Executive Law and the accompanying regulations of the Division of Parole (*see* Executive Law § 259-i [1] [a]; [2] [c] [A]; 9 NYCRR 8001.3, 8002.3 [a], [c]; *see also Matter of Silmon v Travis*, 95 NY2d 470, 476-477 [2000]). The Board and the court correctly relied on the above standards in this case. However, because petitioner was granted an earned eligibility certificate, this case is also governed by Correction Law § 805, a similar but not identical provision.

Correction Law § 805 states in pertinent part: "Notwithstand-

ing any other provision of law, an inmate who is serving a sentence with a minimum term of not more than eight years and who has been issued a certificate of earned eligibility, *shall be granted parole release at the expiration of his minimum term . . . unless the board of parole determines that there is a reasonable probability that, if such inmate is released, he will not live and remain at liberty without violating the law and that his release is not compatible with the welfare of society.* Any action by the commissioner pursuant to this section shall be deemed a judicial function and shall not be reviewable if done in accordance with law" (emphasis added).

As the terms of section 805 make plain, the receipt of an earned eligibility certificate does not preclude the Board from denying parole, nor does it eliminate the Board's discretion in making the release decision (*Matter of Barad v New York State Bd. of Parole,* 275 AD2d 856 [2000], *lv denied* 96 NY2d 702 [2001]). However, some nisi prius courts have held, and we agree, that the statute creates a presumption in favor of parole release of any inmate who, like petitioner, has received a certificate of earned eligibility and has completed a minimum term of imprisonment of eight years or less (*Matter of Marino v Travis,* Sup Ct, Queens County, 2003, Index No. 15788/02, *affd* 13 AD3d 453 [2004]; *Matter of Weinstein v Dennison,* 7 Misc 3d 1009[A], 2005 NY Slip Op 50518[U], *8 [Sup Ct, NY County 2005]).

Although the last sentence of section 805 states that any board action pursuant to this section "shall be deemed a judicial function and shall not be reviewable if done in accordance with law," courts have interpreted this phrase, and a similar one in Executive Law § 259-i (5), to mean that judicial intervention is not warranted unless there has been "a showing of irrationality bordering on impropriety" (*Matter of Russo v New York State Bd. of Parole,* 50 NY2d 69, 77 [1980]; *Matter of Marino v Travis,* 289 AD2d at 493-494).

Petitioner has succeeded in demonstrating the irrationality of the Board's determination in two significant respects. First, petitioner has made a convincing showing that the Board's "reasonable probability" determination was based almost exclusively on the nature and seriousness of the offense, with only a fleeting reference to the petitioner's alleged "limited insight into [his] ongoing crimes and victims of these crimes." A Parole Board's exclusive reliance on the severity of the offense to deny parole not only contravenes the discretionary scheme mandated by statute, but also effectively constitutes an unauthorized resentencing of the defendant (*see Matter of King v New York State Div. of Parole,* 190 AD2d 423, 432 [1993], *affd* 83 NY2d

788 [1994] [to deny parole based exclusively on the severity of offense, there must be some significant aggravating or egregious circumstances surrounding the commission of the crime]; *Cappiello v New York State Bd. of Parole*, 6 Misc 3d 1010[A], 2005 NY Slip Op 51762[U] [2005] [Board's unjustifiable reliance solely on the severity of the crime exceeded its administrative discretion and was contrary to law]).

Moreover, the Board's perfunctory discussion of petitioner's alleged lack of insight is contrary to the Court of Appeals' decision in *Matter of Silmon v Travis* (95 NY2d at 477), which held that a petitioner's remorse and insight into his crimes are highly relevant in evaluating an inmate's rehabilitative progress, especially where, as here, the prisoner has otherwise lived a law-abiding life and maintained a good prison record. Despite the critical significance of these factors in evaluating an inmate under the "reasonable probability" standard, the Board's decision in this case offers no supportive facts justifying its finding of lack of insight and remorse.

The Board's lack of supporting facts in its written decision might be excused if the parole hearing record otherwise supported its conclusion, but in this case it does not. The hearing transcript contains numerous statements by petitioner demonstrating his understanding of the harm caused by his misconduct and his remorse for it. For instance, when asked by a board member why he stole the money, he responded: "I have had much time to think about for the past three years why I did what I did, what motivated such egregious behavior. I know what I did . . . I s[tole] my clients' funds and as a result of it I hurt my clients and I inflicted pain on my family and those that I loved. I believe that understanding why you do something, if you're going to avoid doing it in the future, is what counts."

Later in his testimony, petitioner stated: "I lost sight of who I was as a human being, what my values were, how I lived my life and the kind of person that I was up until that point in time. I forgot the meaning of my oath, my fiduciary [ ] oath. I forgot the meaning of my sacred vow as a lawyer. I betrayed rather than lived up to the trust that was [re]posed to me by my clients."

When petitioner was asked why he didn't simply allow his business to fail, instead of resorting to stealing from his clients, he responded: "I know I had no right to spend my clients' money, even if I believed that I could pay it back. I mean borrowing is all . . . that was the state of mind, that we were borrowing[,] is stealing. And the irony of it is also I wound up hurting the very, very same clients that for my whole life I really

battled valiantly, fought to protect their rights . . . [a]nd I'm sorry for what I did. I really truly am sorry for what I did."

Based on our reading of the hearing record in its entirety, the Board's conclusion petitioner's testimony demonstrated "limited insight" into his criminal behavior is "irrational bordering on impropriety." Although the Board's evaluation of the petitioner's credibility is ordinarily entitled to deference, we find the petitioner's testimony and the Board's conclusion virtually irreconcilable. In order to justify its conclusion, the Board would have had to discredit nearly every word of petitioner's testimony, and there is simply no basis on this record to do that.

Supreme Court's reasoning in affirming the Board's finding that petitioner lacked insight fares no better when compared to the actual record. The court found that petitioner's lack of remorse or insight was shown by the way he "attempted to downplay both the seriousness of the crime and his role," by noting that most of the client victims had been "made whole" by the Lawyers' Fund and by insinuating that his partner was more culpable. As discussed below, these characterizations are based on distortions of the hearing record.

As evidence of petitioner's alleged downplaying of the seriousness of the offense, the Board argued that he "repeatedly" noted that all but one of his former clients was "paid in full" by the Lawyers' Fund. In fact, however, there are only two references to the clients being paid in full, and, regrettably, the Board failed to provide the context of these statements. The record shows that petitioner's statements were in response to specific questions by a board member regarding his plans for future employment and how much money he actually owed. From the context, it is obvious that petitioner was fully cognizant of his own repayment obligations, as confirmed by his subsequent acknowledgment that he is liable for the amounts paid to the victims by the Lawyers' Fund. Thus, far from "repeatedly" minimizing his conduct, petitioner merely answered the questions put to him, while consistently acknowledging his outstanding personal obligations. The court erred in finding a lack of insight on this basis.

The record also belies the court's finding, advocated by the Board, that petitioner tried to minimize his role by shifting the blame to his partner. The Board focused on petitioner's testimony that his partner was the one who "ran the business" while he "was on the outside trying cases." Again, the Board and the court ignored the context by failing to note that these partial quotes were in response to the question: "Who were the partners in the business?" Petitioner's complete answer was: "I

had one partner. His name was Alan Wexler (*sic*). He was the administrative partner. He ran the business and I basically was on the outside trying cases." This statement, by itself, does not evince an intent on petitioner's part to blame his partner for his own criminal acts, especially since he freely admitted elsewhere in his testimony that he stole money for personal reasons totally unrelated to the administration of the firm's business.

As should be plain from the above, the court's conclusions regarding lack of insight and remorse were based on an inaccurate reading of the record (*see Matter of EK v Travis*, 7 Misc 3d 1031[A], 2005 NY Slip Op 50840[U] [Sup Ct, Albany County, Sheridan, J., 2005] [Board's reasons for denial were "flawed" in part because of inaccuracies in Board's description of petitioner's criminal history]; *cf. Matter of Hancher v Travis*, 1 Misc 3d 903[A], 2003 NY Slip Op 51483[U] [2003] [parole release not irrational where record belies victims' representatives' argument that inmate failed to admit guilt at hearing]). Since the factual basis underlying the Board's conclusion that petitioner lacked insight into his crimes has been discredited, the Board's finding of lack of insight cannot stand. Accordingly, as the sole remaining basis for the Board's denial was the seriousness of the offense, such conclusion was irrational bordering on impropriety (*see Matter of Weinstein v Dennison*, 2005 NY Slip Op 50518[U], * 9 [Sup Ct, NY County 2005]).

The Board's decision to deny parole in these circumstances finds no support in the court's flawed attempts to distinguish the *Marino* decisions (*Matter of Marino v Travis*, Sup Ct, Queens County, 2001, Index No. 22169/00, *affd* 289 AD2d 493 [2001]; *Matter of Marino v Travis*, Sup Ct, Queens County, 2003, Index No. 15788/02, *affd* 13 AD3d 453 [2004]). In *Marino*, a 78-year-old attorney was convicted of stealing a substantial sum of money from client escrow accounts, just as petitioner was. The similarity continues: Marino received an indeterminate sentence of 3 to 9 years, he was disbarred after his felony conviction, he was a model prisoner and had received an earned eligibility certificate and, having completed his minimum term of imprisonment, he sought parole release pursuant to Correction Law § 805 (*see* 13 AD3d at 453).

The Parole Board denied Marino's request, finding a reasonable probability that he would violate the law and be a threat to the community if released, but the trial court found such determination to be irrational and granted his CPLR article 78 petition. It remanded the matter to the Parole Board for a de novo hearing, which determination was affirmed by the Second Department (289 AD2d 493 [2001]).

After the appellate decision, Marino came up for parole on three separate occasions and was denied release each time, based on essentially the same evidence. Supreme Court again held that the board had acted irrationally, and the Board appealed. The Second Department affirmed for the second time, finding that the Board's determination was not based on any new evidence, and this time, the Court ordered Marino's release instead of a de novo hearing (13 AD3d 453 [2004]).

In the instant case, the Board and the court found *Marino* distinguishable because of the differences in "their relative ages and health; in the amount of funds misappropriated; and in the number of victims." With the exception of the age factor, none of these alleged distinctions are supported by the evidence in the respective records. The state of Marino's health at the time of the parole denial is disputed by the parties herein, rendering a comparison with this case impossible. Further, while the Board argued in this case that Marino's theft of $50,000 pales in comparison to the $4.7 million stolen by petitioner, the record shows that the $50,000 figure cited by the Board reflects the statutory amount charged in the *Marino* indictment (*see* Penal Law § 155.40 [1]), not the actual amount stolen. Indeed, there is a reference elsewhere in the *Marino* record that Marino stole "millions," bringing the amount much closer to that involved in the instant case. Finally, the number of victims cannot be a distinguishing factor between the two cases since both records reveal "multiple victims." These erroneous or unsubstantiated distinctions provide no basis to deprive the *Marino* decisions of precedential force in the instant context.

In sum, because the Board's conclusion that a "reasonable probability" existed that petitioner would violate the law and be a threat to the community if released was based solely on the nature and severity of his crimes, it is "irrational bordering on impropriety" and must be annulled. A de novo hearing is required at which the Board must consider the appropriate factors in light of the "reasonable probability" standard under Correction Law § 805 (*see Cappiello, supra* [Board's role is to evaluate inmate's current danger, not to resentence him by substituting its own opinion of the severity of his crime for that of the court]). Further, the Board's determination must be stated in nonconclusory terms, as the statute requires (Executive Law § 259-i [2] [a]).

In light of the foregoing, it is unnecessary to address petitioner's additional contention that the Board's determination violated the pertinent parole regulations (*see* 9 NYCRR 8001.3, 8002.3). Concur—Tom, J.P., Andrias, Ellerin, Gonzalez and Catterson, JJ.