[834 NYS2d 121]

In the Matter of WILLIAM R. PHILLIPS, Respondent, v ROBERT DENNISON, as Chairman of the New York State Board of Parole, Appellant.

First Department, April 12, 2007

**APPEARANCES OF COUNSEL**

*Andrew M. Cuomo, Attorney General,* New York City (*Laura R. Johnson* and *Michelle Aronowitz* of counsel), for appellant.

*Kuby & Perez LLP,* New York City (*Daniel M. Perez* and *David J. Pressman* of counsel), for respondent.

**OPINION OF THE COURT**

SAXE, J.P.

This is a CPLR article 78 proceeding brought by petitioner William R. Phillips, a former New York City police officer who is currently serving a term of 25 years to life for his 1975 conviction of two counts of murder and a count of attempted murder. He contends that the denial of his fourth parole application by the New York State Parole Board constituted an abuse of its discretion, asserting that the parole denial was not properly supported by the legitimate considerations listed in Executive Law § 259-i, but was instead prompted solely by improper policy considerations which are not the proper province of the Board. However, in our view, notwithstanding the Board's recognition that he has been an exemplary inmate who no longer poses a threat to society, other facts, properly considered as elements of the factors listed in the statute, support the Board's denial of parole.

Facts

Petitioner was a New York City police officer from 1957 to 1974. In the early 1970s, he was apprehended for corrupt activities involving collection of protection money from a prostitution ring. He then agreed to cooperate with the Knapp Commission,

which was investigating widespread corruption in the NYPD, and he became a star witness against other corrupt police officers. As a result of his appearance before the Knapp Commission, which was televised, petitioner was identified as the perpetrator of a murder, and he was ultimately convicted of two counts of murder and one count of attempted murder arising out of a 1968 incident in which, on Christmas Eve, while trying to extort protection money, he shot and killed a man working as a pimp and bookmaker, and a 19-year-old prostitute who witnessed the murder, as well as wounding a third person who was at the scene. On January 28, 1975, petitioner was sentenced to 25 years to life and 20 years to life for the two murders and $8^{1}/_{3}$ to 25 years for the attempted murder, all sentences to run concurrently. He remains incarcerated to date.

The Parole Hearing

On September 14, 2005, petitioner appeared before the Board for his fourth parole hearing. At the time, he was 75 years old and had served 31 years in maximum security institutions.

When asked by the Board about the commission of his crimes, petitioner described the incident in such a way as to avoid direct acknowledgment that he precipitated the incident by his conduct in attempting to extort payment from his victim, and that in response to the victim's noncooperation, he shot him in the head at short range and then shot the two other individuals. Petitioner's description of the event was that, "an argument ensued . . . and everybody was drunk and yelling and shouting and all of a sudden . . . then the shooting erupted and I left the building." It took a Commissioner's blunt question, "Wait a minute. You pulled out a gun and you killed him, right?" for petitioner to answer "Yes." When asked if he killed the girl because she witnessed the event, he said, "[w]ell, this was the circumstances of the event." His explanation for the incident was that "I guess you're in a state of, you know, this red thing comes over you," which he attributed generally to "this conglomeration of everything [he] was going through" as a police officer.

Focusing on the subject of taking responsibility, petitioner began by saying "I have this remorse of what happened that I ruined my life, because of one incident." When the Commissioner pointed out that, more importantly, he ruined other people's lives too, not only the victims' but their families' as well, petitioner went on to express remorse "[f]or the victims and their families, and all of the people that I caused problems for."

In response to petitioner's observation that there was no violence on his 31-year prison record, the Board's Chairman candidly acknowledged petitioner's stellar institutional record and important participation in many forms of community service while serving his sentence:

> "You are what they call a model inmate. You have done numerous things in prison, which we will mention. It's just that you killed two people, you tried to kill a third. And I know the Courts have commented on it and the Judge commented on it the last time about rehabilitation, and the fact that, you know, you are not a threat to society, that what else can someone else like you do, except just to do what you are doing. But the hard part for us, is that you're responsible for two lives lost. And there aren't too many more serious crimes in the State Prison system, especially from someone who had no prior criminal record, who was a police officer, who just, quite frankly, was a cold-blooded killer. I know that was many years ago, but that is the hard part for us. How many years is enough for taking two lives and trying to kill a third?"

However, these off-the-cuff remarks do not constitute the Board's full analysis of the applicable statutory factors, although they are consistent with the written decision. The Board's written denial of parole states:

> "You were a New York City Police Officer and you brutally murdered your two victims and attempted to murder a third victim. You shot these victims at close range intending to kill them. We recognize the extremely lengthy time you've been imprisoned, your lengthy period of positive programming and your excellent disciplinary record. However, in view of your most heinous crimes (one of your murdered victims was a nineteen year old girl) this Panel feels that to release you at this time would deprecate the seriousness of your criminal acts and undermine respect for the law."

The IAS court annulled the Board's denial of parole, concluding that the Board failed to give fair consideration to the mandated statutory factors set out in Executive Law § 259-i (2) (c) (A) and that, despite the absence of aggravating factors, it improperly based its decision to deny parole on the seriousness

of the crime alone. In that regard, the court indicated that since almost all the statutory standards and factors weighed in petitioner's favor, the denial of parole was necessarily based solely, and improperly, on the nature of the crime itself. The court went on to observe that the Board completely changed its rationale for denying petitioner parole from its rationale in his third application, namely, that petitioner was a danger to society. The IAS court reasoned that this change in rationales showed that the Board's third denial of parole was pretextual, and that its present determination was similarly based on an improper predisposition to deny parole rather than a fair consideration of the statutory factors.

For the reasons that follow, we reverse and reinstate the Board's determination.

Discussion

In order to set aside a determination of the Parole Board, the petitioner bears the heavy burden of establishing that the determination was the result of " 'irrationality bordering on impropriety' " (*Matter of Silmon v Travis*, 95 NY2d 470, 476 [2000], quoting *Matter of Russo v New York State Bd. of Parole*, 50 NY2d 69, 77 [1980]). We conclude that the challenged determination was rationally based upon appropriate considerations following a weighing of all applicable statutory standards and factors.

Analysis begins with the language of Executive Law § 259-i (2) (c) (A):

> "Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, *and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law*" (emphasis added).

The paragraph then lists guidelines that must be taken into consideration, including the petitioner's institutional record, performance in temporary release programs, and his release plans. "[W]hile the relevant statutory factors must be considered, it is well settled that the weight to be accorded to each of the factors lies solely within the discretion of the Parole Board.

Moreover, the Board is not required to expressly discuss each of the guidelines in its determination" (*Matter of Walker v Travis*, 252 AD2d 360, 362 [1998] [internal quotation marks and citations omitted]).

We reject petitioner's suggestion that if the Board had properly weighed his accomplishments against the nature of his crime, a neutral evaluation of the record would have compelled that the former outweighs the latter, requiring a grant of parole. The Board appropriately placed primary emphasis on its concerns about the circumstances of the crime itself, and whether petitioner's release would "so deprecate the seriousness of [the] crime as to undermine respect for law."

As to the seriousness of the crime, we strongly disagree with petitioner's implication that the nature of his crime was no more heinous than any other murder, the implication being that the denial of his application is inconsistent with the grant of parole to others convicted of murder (comparing *Matter of King v New York State Div. of Parole*, 190 AD2d 423, 433, 434-435 [1993], *affd* 83 NY2d 788 [1994]). There is no entitlement to parole based upon comparison with the particulars of other applicants. Rather, each case is sui generis, and the Board has full authority in each instance to give the various factors a unique weighted value (*see e.g. Matter of Anthony v New York State Div. of Parole*, 17 AD3d 301 [2005], *lv denied* 5 NY3d 708 [2005]; *Matter of Garcia v New York State Div. of Parole*, 239 AD2d 235, 238 [1997]; *Matter of Kirkpatrick v Travis*, 5 AD3d 385 [2004]). Moreover, petitioner's crimes went well beyond the "unjustifiable taking and tragic loss of a human life" that describes every murder (*King*, 190 AD2d at 433). Petitioner, while employed as a police officer, corruptly embarked on a pattern of extortion, in the course of which he committed a cold-blooded double homicide and shot a witness. His crimes were committed through the use and perversion of the power of his position as a New York City police officer, and, as such, violated the very fabric of our system of law and justice. Given this context, the Board's concession that petitioner was an exemplary inmate who is now unlikely to pose a danger to the community did not necessarily outweigh the horrifying nature of the acts surrounding his crimes (*see Matter of Cardenales v Dennison*, 37 AD3d 371 [2007]; *Matter of Wilcher v Dennison*, 30 AD3d 958 [2006]; *Matter of Thompson v New York State Div. of Parole*, 30 AD3d 746 [2006], *lv denied* 7 NY3d 716 [2006]).

In addition, the Board's expression of concern that granting parole to petitioner would deprecate the seriousness of the crime

is supported by petitioner's apparent reluctance or inability to plainly admit to the Board, without prompting, the exact nature of his criminal acts. In our view, petitioner's limited remorse and insight into his criminal acts is not only pertinent to his rehabilitative progress (*see Silmon*, 95 NY2d at 477-478), but also deprecates the seriousness of his crimes. Indeed, since petitioner proposed that upon his release, he could be useful in working with young people by warning them against becoming involved in a life of corruption or crime, each such occasion at which he again avoided acknowledging his acts would in effect constitute another deprecation of the seriousness of his crimes.

We view the Commissioners' remarks and rhetorical questions during the hearing as merely an open invitation to petitioner to further address his acts and motives; they did not reflect consideration of impermissible factors, as occurred in *Matter of King v New York State Div. of Parole* (83 NY2d 788 [1994], *supra*).

As to petitioner's contention, with which the IAS court agreed, that comparison of the Board's reasons for denying his third request for parole and its reasons for denying his fourth request illustrates the pretextual basis for both decisions, it need only be observed that the prior ruling of this Court reinstating the denial of petitioner's third application for parole was based on "the heinousness of petitioner's crime" (*Matter of Phillips v Travis*, 21 AD3d 335 [2005]). Moreover, the fact that the Board deviated from its 2003 decision, where it found that petitioner posed a threat, shows only that it considered the factors anew.

Venue

Finally, we note that the Board correctly asserts that venue for a proceeding such as this is properly placed in the county where the parole hearing was held and the challenged determination made, or where the Board's principal office is located (*see Matter of Ramirez v Dennison*, 39 AD3d 310 [2007, decided herewith]; *Matter of Vigilante v Dennison*, 36 AD3d 620 [2007]; *cf. Matter of Howard v New York State Bd. of Parole*, 5 AD3d 271 [2004]). Under CPLR 506 (b), the "material events" leading to the subject parole determination were not the crime and sentence, but "the decision-making process leading to the determination under review" (*Vigilante, supra* at 622).

Accordingly, the judgment of the Supreme Court, New York County (Marcy Friedman, J.), entered November 6, 2006, which granted the article 78 petition to the extent of (1) annulling

respondent's September 2005 determination denying, after a hearing, petitioner's fourth application for parole, (2) remanding the matter for a hearing limited to the issue of whether petitioner's circumstances have changed since the September 2005 determination, and (3) directing issuance of a determination releasing petitioner on parole absent any adverse change in circumstances, should be reversed, on the law, without costs, the petition denied, the proceeding dismissed and the determination reinstated and confirmed.

SULLIVAN, NARDELLI, GONZALEZ and KAVANAGH, JJ., concur.

Judgment, Supreme Court, New York County, entered November 6, 2006, reversed, on the law, without costs, the petition denied, the proceeding dismissed and the determination reinstated and confirmed.