OPINION OF THE COURT
Frank J. LaBuda, J.
This matter comes before the court on petitioner’s request for immediate release to parole, or in the alternative, a de novo parole hearing. Respondents have submitted an affirmation in opposition. The court heard oral argument on August 18, 2014.
At the outset, respondents argued, and this court agrees, that the court is without authority at this time to order petitioner’s immediate release. For the reasons stated below, however, the petitioner is entitled to a de novo parole hearing.
Factual and Procedural Background
In March 1986, then 30-year-old petitioner strangled his 25-year-old wife and buried her body at an out-of-state location. When questioned by the police approximately one week later, petitioner made a full oral and written confession and disclosed the burial location to the police. He was arrested and charged with murder in the second degree. He was tried by a bench trial before Hon. Edward A. Baker, Nassau County Court Judge,* in which his defense was “extreme emotional disturbance,” due to his wife’s alleged ongoing adulterous behavior. Both petitioner’s and the People’s psychiatrists testified at trial that petitioner acted under extreme emotional disturbance when he killed his wife. The trial court, however, found petitioner guilty of murder in the second degree, but after considering many factors, including numerous letters of support, sentenced petitioner to 15 years to life in state prison, the minimum allowable sentence.
Petitioner appeared for his eighth parole hearing on January 14, 2014, at Woodbourne Correctional Facility, having served 28 years in state prison—many years beyond his minimum sentence. He is now 58 years old. The hearing took place before Commissioners Ferguson, Elovich and Alexander. The Board denied parole release, with Commissioner Ferguson dissenting, and imposed a 24-month hold. Petitioner timely filed a notice of administrative appeal on January 16, 2014, which was received by the Board on January 21, 2014. Petitioner’s counsel perfected the administrative appeal on February 21, 2014, which was received by the appeals unit on February 25, 2014. The appeals unit failed to render a decision on the administrative appeal. *605 Petitioner then timely filed the within petition. The within petition concerns the denial of parole after the January 2014 de novo hearing previously ordered by this court, by decision and order dated November 27, 2013.
Petitioner argues that the Board’s decision focused almost exclusively on the instant offense, ignored petitioner’s clean disciplinary record, ignored petitioner’s institutional achievements, support for release, and plans for release, rendering the decision to deny parole arbitrary and capricious. Petitioner further contends that the Commissioners were misinformed and argumentative. For the reasons stated below, this court agrees with petitioner’s arguments and grants the within petition.
Parole Law
Executive Law § 259-i (2) (c) (A) states in pertinent part:
“In making the parole release decision, the procedures adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate.”
The parole board must also consider whether
“there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.” (Id.; see 9 NYCRR 8002.1.)
In reaching its decision, the Board must also consider:
a. the inmate’s institutional record;
b. the inmate’s release plans;
c. any statement made to the Board by the victim’s representative;
d. the seriousness of the offense, with consideration of the sentence and the recommendation of the sentencing court; and
e. the inmate’s prior criminal record.
Parole boards have very wide discretion to grant or deny parole release; the board decides how much weight to give each of *606 the factors listed above. (Matter of Phillips v Dennison, 41 AD3d 17 [1st Dept 2007].) It is also not necessary that the board expressly discuss each of the factors or any guidelines in its determination. (Matter of Walker v Travis, 252 AD2d 360 [1st Dept 1998].) An inmate bears the heavy burden of establishing that the determination of a parole board was the result of “irrationality bordering on impropriety.” (Matter of Silmon v Travis, 95 NY2d 470, 476 [2000]; Matter of Russo v New York State Bd. of Parole, 50 NY2d 69 [1980].) Nonetheless, the reasons for denying parole must “be given in detail and not in conclusory terms.” (Executive Law § 259-i [2] [a] [i]; Matter of Wallman v Travis, 18 AD3d 304 [1st Dept 2005]; Matter of Malone v Evans, 83 AD3d 719 [2d Dept 2011].)
The standard of review in regard to parole release is whether the decision was so irrational as to border on impropriety. (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69 [1980]; Matter of Epps v Travis, 241 AD2d 738 [3d Dept 1997]; Matter of Silmon v Travis, 95 NY2d 470 [2000].) When considering the various factors, the weight accorded to any particular factor is solely within a parole board’s discretion. (Matter of Santos v Evans, 81 AD3d 1059 [3d Dept 2011]; Matter of Wise v New York State Div. of Parole, 54 AD3d 463 [3d Dept 2008].) Included in such factors are the seriousness of the instant offense(s) and an inmate’s criminal history. (Executive Law § 259-i [2] [c] [A].)
In 2011, the legislature made changes to Executive Law § 259. The changes to Executive Law § 259-c (4) became effective on October 1, 2011. In essence, those modifications now require that parole boards (1) consider the seriousness of the underlying crime in conjunction with the other factors enumerated in the statute (Executive Law § 259-i [2]); and (2) conduct a risk assessment analysis to determine if an inmate has been rehabilitated and is ready for release. (Executive Law § 259-c [4].) The changes were intended to shift the focus of parole boards to a forward-thinking paradigm, rather than a backward-looking approach to evaluating whether an inmate is rehabilitated and ready for release.
Last, Executive Law § 259-i (5) states, “any action by the board or by a hearing officer pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law.” In Matter of Hamilton v New York State Div. of Parole (119 AD3d 1268 [3d Dept 2014]), the Third Department held, “so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond *607 review in the courts.” (Id. at 1269, quoting Matter of Hines v State Bd. of Parole, 293 NY 254, 257 [1944].) That does not mean administrative parole decisions are virtually unreviewable; Hamilton simply clarifies what the statute has demanded for many years—that any action by the Board must be in accordance with the law, or it is subject to judicial review.
Discussion
While a parole board enjoys a significant level of discretion, the discretion is not unlimited. There are numerous things a parole board cannot do. First, a parole board cannot base its decision to deny parole release solely on the serious nature of the underlying crime. (Matter of Rios v New York State Div. of Parole, 15 Misc 3d 1107[A], 2007 NY Slip Op 50529[U] [Sup Ct, Kings County 2007]; see also Matter of King v New York State Div. of Parole, 190 AD2d 423 [1st Dept 1993], affd 83 NY2d 788 [1994].) Second, while the Board need not consider each guideline separately, and has broad discretion to consider the importance of each factor, the Board must still consider the guidelines. (Executive Law § 259-i [2] [a]; Rios.) Third, the reasons for denying parole must he given in detail and not conclusory terms. (Executive Law § 259-i [2] [a]; Matter of Wallman v Travis, 18 AD3d 304 [1st Dept 2005].) Last, a parole board cannot re-try an inmate, harass, badger or argue with an inmate, second-guess the findings of competent experts involved in the inmate’s trial, or infuse their own personal beliefs into the proceeding. (King at 432.)
In King, the First Department stated:
“[W]hile the courts remain reluctant to second-guess the decisions of the Board, it is unquestionably the duty of the Board to give fair consideration to each of the applicable statutory factors as to every person who comes before it, and where the record convincingly demonstrates that the Board did in fact fail to consider the proper standards, the courts must intervene. . . .
“The role of the Parole Board is not to resentence petitioner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether, as of this moment, given all the relevant statutory factors, he should be released. In that regard, the statute expressly mandates that the prisoner’s educational and other achievements affirmatively be taken into consider *608 ation in determining whether he meets the general criteria relevant to parole release under section 259-i (2) (c).” (Id. at 431-432 [emphasis added].)
After a thorough review of the record before this court, including the confidential materials for in camera review, this court has determined the decision to deny parole release to petitioner was so irrational as to border on gross impropriety and illegal action. The Commissioners based their decision to deny parole release to petitioner solely on their personal opinions of the nature of the instant offense and improper characterizations of petitioner’s actions immediately following the murder, they did not consider all of the guidelines or factors, and the decision was in conclusory terms and unsupported by the record, and at least one Commissioner was argumentative and appeared to have made the decision prior to the parole interview.
The record indicates that the first two thirds of the interview consisted solely of discussion about the instant offense. Although he ultimately dissented, Commissioner Ferguson spent almost half of the parole interview reiterating the specifics of the crime that occurred in 1986. The first 15 pages of the transcript consist almost exclusively of Commissioner Ferguson providing a narrative of the instant offense, including editorializing about petitioner’s behavior, and at page 12 of the transcript he went so far as to speculate as to whether petitioner was trying to frame a third person for the crime; a notion that the other two Commissioners might have considered in denying parole. Worse yet, Commissioner Elovich, apparently unconvinced by the expert testimony at trial and petitioner’s repeated statements regarding his frame of mind during and for the days following the crime, interrogated petitioner repeatedly about his claim that he was in shock after he murdered his estranged wife. Commissioner Elovich, who to the knowledge of this court is not a psychiatrist, as were the experts at trial, opined that petitioner could not have been in shock after he murdered his wife, because he tried to cover up his crime for almost a week and acted deceptively with his in-laws and the police. This court has been unable to find any statutory or case law that authorizes parole board commissioners to infuse their own personal opinions or speculations into the parole interview or process. (See King.)
There is no additional rationale, other than the Board’s opinion of the heinous nature of the instant offense, and personal beliefs and speculations, to justify the denial of parole *609 release: petitioner has had a close to perfect disciplinary record while incarcerated, has had and continues to have outside clearance without incident, has completed college courses and at least one degree while in prison, has completed every program offered by Department of Corrections and Community Supervision as well as additional programs; his non-felony youthful offender history is unremarkable, and there is nothing in the record to suggest petitioner had any type of escalating history of violence leading up to the instant offense. Petitioner submitted numerous letters of recommendation for his release from corrections officers, officials, and members of the community. He has a substantial support system on the outside, release plans, and housing ready upon his release.
Petitioner has repeatedly expressed remorse, shame and guilt for murdering his wife and takes full responsibility for his actions. He cannot change what he did, yet the Board in this matter, as did the previous Board, spent portions of the parole interview badgering and arguing with petitioner about the instant offense. Petitioner’s argument that the decision to deny parole was based solely on the Board’s opinion of the serious and violent nature of the instant offense and nothing else is supported by the transcript, a transcript that indicates that, while the Board paid lip service to the statutory factors, it clearly ignored the Correctional Offender Management Profiling for Alternative Sanction (COMPAS) risk assessment and other materials in petitioner’s file, all of which support release for this inmate.
“Certainly every murder conviction is inherently a matter of the utmost seriousness since it reflects the unjustifiable taking and tragic loss of a human life. Since, however, the Legislature has determined that a murder conviction per se should not preclude parole, there must be a showing of some aggravating circumstances beyond the inherent seriousness of the crime itself.” {King at 433.)
This Board failed to cite any aggravating factors in petitioner’s case and the remainder of the hearing transcript in petitioner’s case reveals that the Board discussed other factors and petitioner’s achievements while in prison in a very perfunctory manner, and in fact never discussed anything other than the instant offense in detail. (See Matter of Coaxum v New York State Bd. of Parole, 14 Misc 3d 661 [Sup Ct, Bronx County 2006].) Approximately one third of the time the Board spent *610 with petitioner consisted of any discussion or inquiry regarding his rehabilitation, numerous achievements while in prison, his plans for release, his skills, his very positive scores on the COMPAS risk assessment, or any of the other positive factors weighing heavily in favor of parole release.
After spending almost the entire hearing questioning petitioner about the instant offense and then making the obligatory, but superficial inquiry into other factors, the Board somehow concluded his release would be incompatible with the welfare and safety of the community and that his release would “so deprecate the serious nature of the crime as to undermine respect for the law,” without any further detail. Petitioner asks how that is so; respondents provided no specific explanation in their answering papers or during oral argument. This Board, like the one before it, conducted petitioner’s parole interview in violation of the law.
Respondents argued strenuously that Hamilton and Executive Law § 259-i (5) significantly limit judicial review to whether the Board acted in accordance with the law. This court reads Hamilton differently, and although it agrees with the dissenting opinion of Hon. Karen Peters, must nevertheless apply the Hamilton holding to the case at bar. The Third Department held that as long as the parole board violates no positive statutory requirement, the Court cannot disturb its decision. Well, this court has determined that the Board not only violated a positive statutory requirement, but conducted itself in such a manner as to border on gross impropriety and illegality. First, the Board violated the statutory requirement to provide a detailed decision. There is no detail in the decision, and it reads more or less just like the decision from petitioner’s previous parole denial. There is no explanation for a denial of parole, other than reiterating the facts of the crime. That is insufficient. Petitioner has already been tried for murder and was convicted and sentenced by a judge pursuant to statutory guidelines. A parole interview is not supposed to be a retrial, which is what petitioner’s interview amounted to. Parole interviews were not intended to circumvent the sentencing guidelines created by the legislature; if the legislature saw fit to punish murder in the second degree with a sentence of life without parole, it could have done so. Allowing a parole board to rely on the seriousness of the instant offense in every decision to deny parole release to an inmate who is serving an indeterminate sentence of a minimum amount of years to life, and who is otherwise ready for *611 release, amounts to nothing short of allowing the Parole Board to rewrite the sentencing guidelines for murder in the second degree to life without parole until a parole board decides otherwise.
Second, the transcript leaves no doubt that this Parole Board based its denial of parole on the Commissioners’ personal opinions regarding the nature of the offense, their personal opinions regarding petitioner’s behavior after he murdered his wife, and their personal interpretation of what is appropriate behavior to constitute “shock.” Contrary to respondents’ arguments, this court does not interpret Hamilton to mean the Division of Parole can forever rely on the nature and seriousness of the underlying offense to deny parole forever to an inmate who has a clean disciplinary record and whose record indicates he has been completely rehabilitated. This court does not interpret Hamilton to mean that randomly chosen Commissioners have the discretion and power to re-try, resentence, and punish inmates in contravention of the statutory mandates and punishments meted out by judges.
During oral argument, counsel for respondents argued that under Hamilton, Supreme Court’s review of a denial of parole is limited to whether there was something inappropriate about the interview that would cause it to be considered arbitrary and capricious. A review of the record and specifically the transcript in the case at bar indicate much of the interview was inappropriate. The conduct of this Parole Board is exactly the type of conduct that warrants review by a court of law. This is not the first time this court has had to admonish a parole board (see Matter of Winchell v Evans, 32 Misc 3d 1217[A], 2011 NY Slip Op 51347[U] [Sup Ct, Sullivan County 2011] [concerning inmate Craig Winchell, who was eventually paroled after his 12th appearance before a board consisting of past Commissioner Andrea Evans and another commissioner]). It is disturbing to this court that Commissioner Elovich saw fit to inject personal opinion into the proceeding, and that Commissioner Ferguson insinuated that petitioner’s choice of where to hide the victim’s body suggested he was trying to frame one of her adulterous lovers. (See parole interview tr, Jan. 14, 2014 at 12 [Commissioner Ferguson stated, “There is some information in the record that that’s one of the locations she was meeting lovers. So it almost seemed like you were trying to set him up for it. So there’s that”].) Surely, the Hamilton decision does not, and was not intended to, allow for parole commissioners to make statements *612 such as that without affording an inmate judicial review of whether such a statement is even remotely supported by the record before the Board.
Because the decision lacks any foundation in reality, this court is left with no ability to evaluate why two of the Commissioners on the Board denied parole. Looking at the record as a whole, the court concludes that not only does the record fail to clarify on what specific grounds the Board denied parole, but the record strongly supports parole release for this inmate, who has served nearly double the time of his minimum sentence. The Board’s decision and respondents’ counsel’s oral argument fail to specify why the Board concluded petitioner’s release would be incompatible with the safety and welfare of society or why his release would deprecate the serious nature of the crime so as to undermine respect for the law. (Rios.)
“While making a passing reference to [Petitioner’s] ‘clean disciplinary record and positive programmatic efforts,’ the Parole Board made clear that those factors no matter how impressive, could not justify his release from prison when weighed against the seriousness of the crime. Thus, the passing mention in the Parole Board’s decision of petitioner’s rehabilitative achievements cannot serve to demonstrate that the Parole Board weighed or fairly considered the statutory factors where, as here, it appears that such achievements were mentioned only to dismiss them in light of the seriousness of petitioner’s crime (see Matter of Phillips v Dennison, NYLJ, Oct. 12, 2006, at 23, col 1; quoting Matter of King, 190 AD2d at 434).” (Rios, 2007 NY Slip Op 50529[U],*4 [internal quotation marks and brackets omitted].)
The Board in this matter has failed to articulate any reasoning for its decision to deny parole release to petitioner, and therefore this court holds the decision was arbitrary and capricious. The Board simply restated the usual and predicable language contained in so many parole release denial decisions, with no specificity or other explanation to justify parole denial. Furthermore, it was unacceptable, under the law, for the Commissioners to have speculated on issues against which petitioner could not defend himself, as well as the mental status of petitioner in 1986 during and after he committed the instant offense.
This court stated in Winchell: “What occurred [at the parole interview] was . . . willful disobedience to the law. Through its *613 own conduct, as reflected in the transcript, it is obvious that before the petitioner even appeared, the members of this Parole Board had no intention of entertaining even the slightest thought of his parole.” (32 Misc 3d 1217[A], 2011 NY Slip Op 51347[U], *7.) Based on the record in the instant matter, it appears that this Board, like the one in Winchell, began the interview and proceeded through much of it with such antagonism toward petitioner that this court is left to conclude that the Board had no intention of considering parole release to petitioner herein prior to even meeting with him.
While this court recognizes the substantial discretion afforded to parole boards by statutory authority, and now in the Third Department under Hamilton, that authority and parole board decisions are still reviewable by courts and must stand up to the law and statutory requirements regarding parole release interviews and procedures. The Court of Appeals affirmed King and it has not been overruled. If inmates have no remedy at law after a parole interview such as the one in the case at bar, then perhaps the legislature should consider abolishing parole and restructuring the sentencing guidelines to allow for only determinate sentences handed down by the learned judges in this state who hear the trials or accept the plea agreements of defendants. The role of the parole board is not to re-try and resentence inmates based on personal opinions (King), speculations and biases. It is not only unlawful for the parole board to act beyond the scope of its statutory authority, but it is fiscally irresponsible to maintain a system that serves little purpose other than to chastise inmates for past criminal behavior they cannot change, and prolong punishment based on personal beliefs even when an inmate has become rehabilitated and their likelihood of recidivism is nil.
In the instant matter, the court finds that the Board completely failed to provide an unbiased and fair parole interview to petitioner, rendering the procedure and decision arbitrary and capricious, and so irrational so as to border on gross impropriety. The Board in this case failed to meet the most basic standards of conduct required by the statute by rendering a conclusory decision, clearly based on personal opinions and the instant offense, and completely unsupported by the record and petitioner’s history of incarceration.
While this court agrees with the Appellate Division in King, that the first parole appeal should be remanded to the Parole Board for a de novo hearing, the instant case involves returning *614 the matter to the Parole Board for a second de novo hearing following the Board’s abdication of its responsibilities for a second time. This court believes that if this matter is again returned upon a CPLR article 78 proceeding, involving the same circumstances, a different remedy may be warranted.
Based on the foregoing, it is therefore ordered that the petition is granted to the extent that the Parole Board shall afford the petitioner herein a de novo parole hearing/interview within 30 days of the date of entry of this order, and a decision thereon not more than 15 days thereafter; and it is further ordered that the de novo hearing herein shall consist of at least two Parole Board members, none of whom sat on the prior parole hearing involving the above captioned inmate; and it is further ordered that Commissioner Elovich is forbidden from participating in any parole matters involving petitioner.

 Petitioner waived his right to a jury trial.