[5 NYS3d 702]

In the Matter of JOHN PLATTEN, Petitioner, v NYS BOARD OF PAROLE, Respondent.

Supreme Court, Sullivan County, March 23, 2015

### APPEARANCES OF COUNSEL

*John Platten*, petitioner pro se.

*Eric T. Schneiderman, Attorney General*, Poughkeepsie (*Leilani Rodriguez* of counsel), for respondent.

### OPINION OF THE COURT

FRANK J. LaBUDA, J.

This matter comes before the court on petitioner's request for a de novo parole hearing. Respondent has submitted an affirmation in opposition. Petitioner submitted a reply.

Factual and Procedural Background

On or about November 2, 1988, petitioner was arrested for the murder of his girlfriend after he fatally shot her in the head with a 12 gauge shotgun at her residence in Batavia, New York. At the time of the instant offense, petitioner was 28 years old and had a four-year-old son with the victim. A Genesee County grand jury indicted petitioner, charging him with murder in the second degree. Petitioner had a jury trial, commencing on or about November 6, 1989, before Hon. Glenn R. Morton. At trial, petitioner raised the defense that he acted out of "extreme emotional disturbance" due to the victim's admission of extramarital affairs, informing petitioner that she planned to move to Texas and take their son with her, and what petitioner describes as financial hardships associated with the relationship.

Although a forensic psychological report supporting petitioner's claim of extreme emotional disturbance was submitted during trial, on or about November 17, 1989, the jury found petitioner guilty of murder in the second degree. On or about January 23, 1990, Hon. Glenn R. Morton sentenced petitioner to a term of 20 years to life[*] in state prison.

Petitioner appeared for his eighth parole interview on June 25, 2014; according to petitioner, his parole interview history includes four de novo interviews from the time he became eligible for parole. For the June 2014 interview, a two member panel denied parole and issued a 24-month hold. On or about July 21, 2014, petitioner filed an administrative appeal for

---

[*] This sentence was less than the maximum of 25 years to life.

which the Appeals Unit did not issue a decision. Petitioner timely filed the within CPLR article 78 petition. Petitioner argues the following: (1) the Board denied parole based solely on the instant offense; (2) the Board's decision was arbitrary because it articulated no reasons other than the instant offense for denying parole; and (3) the Board considered non-statutory factors in making its determination.

Discussion—Parole Law

Executive Law § 259-i (2) (c) (A) states in pertinent part:

> "In making the parole release decision, the procedures adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate."

The parole board must also consider whether

> "there is a reasonable probability that, if such inmate is released, he or she will live and remain at liberty without violating the law and that his or her release is not incompatible with the welfare of society and will not so deprecate the seriousness of his or her crime as to undermine respect for the law." (9 NYCRR 8002.1 [a].)

In reaching its decision, the Board must also consider:

a. the inmate's institutional record;

b. the inmate's release plans;

c. any statement made to the board by the victim's representative;

d. the seriousness of the offense, with consideration of the sentence and the recommendation of the sentencing court; and

e. the inmate's prior criminal record.

Parole boards have very wide discretion to grant or deny parole release; the board decides how much weight to give each of the factors listed above. (*Matter of Phillips v Dennison*, 41 AD3d 17 [1st Dept 2007].) It is also not necessary that the board expressly discuss each of the factors or any guidelines in

its determination. (*Matter of Walker v Travis*, 252 AD2d 360 [1st Dept 1998].) An inmate bears the heavy burden of establishing that the determination of a parole board was the result of "irrationality bordering on impropriety." (*Matter of Silmon v Travis*, 95 NY2d 470, 476 [2000]; *Matter of Russo v New York State Bd. of Parole*, 50 NY2d 69 [1980].) Nonetheless, the reasons for denying parole must "be given in detail and not in conclusory terms." (Executive Law § 259-i [2] [a] [i]; *Matter of Wallman v Travis*, 18 AD3d 304 [1st Dept 2005]; *Matter of Malone v Evans*, 83 AD3d 719 [2d Dept 2011].)

The standard of review in regard to parole release is whether the decision was so irrational as to border on impropriety. (*Matter of Russo v New York State Bd. of Parole*, 50 NY2d 69 [1980]; *Matter of Epps v Travis*, 241 AD2d 738 [3d Dept 1997]; *Matter of Silmon v Travis*, 95 NY2d 470 [2000].) When considering the various factors, the weight accorded to any particular factor is solely within a parole board's discretion. (*Matter of Santos v Evans*, 81 AD3d 1059 [3d Dept 2011]; *Matter of Wise v New York State Div. of Parole*, 54 AD3d 463 [3d Dept 2008].) Included in such factors are the seriousness of the instant offense(s) and an inmate's criminal history. (Executive Law § 259-i [2] [c] [A].)

In 2011, the legislature made changes to Executive Law § 259 *et seq.* The changes to Executive Law § 259-c (4) became effective on October 1, 2011. In essence, those modifications now require that parole boards (1) consider the seriousness of the underlying crime in conjunction with the other factors enumerated in the statute (Executive Law § 259-i [2]), and (2) conduct a risk assessment analysis to determine if an inmate has been rehabilitated and is ready for release. (Executive Law § 259-c [4].) The changes were intended to shift the focus of parole boards away from focusing on the severity or heinous nature of the instant office, to a forward-thinking paradigm to evaluate whether an inmate is rehabilitated and ready for release.

Executive Law § 259-i (5) states, "[a]ny action by the board or by a hearing officer pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law." In *Matter of Hamilton v New York State Div. of Parole* (119 AD3d 1268 [3d Dept 2014]), the Third Department held, "so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts." (*Id.* at 1269, quoting *Matter of Hines v State Bd. of Parole*, 293 NY 254 [1944].) That does not mean

administrative parole decisions are virtually unreviewable; *Hamilton* simply clarifies what the statute has demanded for many years—that any action by the Board *must* be in accordance with the law, or it is subject to judicial review.

Analysis

While a parole board enjoys a significant level of discretion, the discretion is not unlimited. There are numerous things a parole board cannot do. First, a parole board cannot base its decision to deny parole release *solely* on the serious nature of the underlying crime. (*Matter of Rios v New York State Div. of Parole*, 15 Misc 3d 1107[A], 2007 NY Slip Op 50529[U] [Sup Ct, Kings County 2007]; *see also Matter of King v New York State Div. of Parole*, 190 AD2d 423 [1st Dept 1993], *affd* 83 NY2d 788 [1994].) The *Hamilton* decision did not affect this prohibition. Second, while the Board need not consider each guideline separately, and has broad discretion to consider the importance of each factor, the Board *must still consider the guidelines*. (Executive Law § 259-i [2] [a]; *Rios*.) Third, the reasons for denying parole must be given in detail and not conclusory terms. (Executive Law § 259-i [2] [a]; *Matter of Wallman v Travis*, 18 AD3d 304 [1st Dept 2005].) Last, a parole board cannot re-try an inmate, harass, badger or argue with an inmate, second-guess the findings of competent experts involved in the inmate's trial, or infuse their own personal beliefs into the proceeding. (*King* at 432.)

In *King*, the First Department stated:

> "[W]hile the courts remain reluctant to second-guess the decisions of the Board, it is unquestionably the duty of the Board to give fair consideration to each of the applicable statutory factors as to every person who comes before it, and where the record convincingly demonstrates that the Board did in fact fail to consider the proper standards, the courts *must* intervene. . . .
>
> "The role of the Parole Board is not to resentence petitioner, according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether, *as of this moment*, given all of the relevant statutory factors, he should be released. In that regard, the statute expressly mandates that the prisoner's educational and other achievements affirmatively be taken into consideration in determining whether he meets the general criteria relevant to parole release under section

259-i (2) (c)." (*Id.* at 431-432 [emphasis added].)

After a thorough review of the record before this court, including the confidential materials for in camera review, this court has determined the decision to deny parole release to petitioner was arbitrary and capricious. The Board's decision read as follows:

> "Following careful review and deliberation of your record and interview, this panel concludes that discretionary release is not presently warranted due to concern for the public safety and welfare. The following factors were properly weighed and considered: your instant offense in Genesee County, in November 1988, involved Murder 2nd. Your criminal history indicates the IO to be your only felony of record. Your institutional programming indicates progress and achievement which is noted to your credit. Your disciplinary record reflects one (1) Tier 2 report. Required factors in the file have been considered, required statutory factors have been considered, including your risk to the community, rehabilitation efforts, and your needs for successful community re-entry. Your discretionary release, at this time, would thus not be compatible with the welfare of society at large, and would tend to deprecate the seriousness of the instant offense, and undermine respect for the law."

Based on the record and the lack of specificity in the decision, the court cannot determine what concern the Board had for the public safety and welfare, and why it had that concern at the time of the interview in 2014.

The record before the court indicates the following: While incarcerated, petitioner earned a Bachelor of Science degree in Liberal Studies from Medaille College (1995). From Medaille College he also earned certificates in Substance Abuse Counseling (1993), Forensic Counseling Aide (1993), and Chemical Dependency (1995). In 1995 petitioner earned a Certificate of Merit through the SUNY Buffalo School of Law in Basic Legal Research and Writing. Petitioner's file is replete with letters of support, certificates, and a petition for his release to parole supervision. He has had outside clearance without incident. Overall, the Correctional Offender Management Profiling for Alternative Sanction risk assessment is very favorable. Other than a recent tier II ticket, the now 55-year-old petitioner appears to have complied with all Department of Corrections and

Community Supervision (DOCCS) requirements, additional programming and training above and beyond DOCCS requirements, and by all accounts has been rehabilitated. Therefore, without further explanation in the Board's decision, the court is unable to determine why the Board denied parole, other than its opinion of the heinous nature of the instant offense and a legally unsupported desire to keep petitioner incarcerated for whatever time the Board believes is appropriate.

There is no additional rationale in the record, other than the Board's opinion of the heinous nature of the instant offense, and unexplained belief that petitioner poses a risk to the welfare of society, that this court could find for the denial of parole release. There is nothing in the record to suggest petitioner had any type of escalating history of violence leading up to the instant offense, nor any propensity to commit violent behavior. The record shows this was an isolated, albeit heinous crime of emotional violence. Petitioner submitted numerous letters of recommendation for his release. He has a substantial support system on the outside, release plans, ready employment, and housing ready upon his release. Petitioner has repeatedly expressed remorse for murdering the victim and takes full responsibility for his actions. He cannot change what he did. The crime was heinous.

Petitioner's argument that the decision to deny parole was based solely on the Board's opinion of the serious and violent nature of the instant offense and nothing else is supported by the record; the language in the decision is perfunctory and meaningless in the context of this case.

> "Certainly every murder conviction is inherently a matter of the utmost seriousness since it reflects the unjustifiable taking and tragic loss of human life. Since, however, the Legislature has determined that a murder conviction per se should not preclude parole, there must be a showing of some aggravating circumstances beyond the inherent seriousness of the crime itself." (*King* at 433.)

This Board failed to cite any aggravating factors in petitioner's case. The hearing transcript in petitioner's case reveals that while the Board met its obligation to discuss other factors and petitioner's achievements while in prison, it did so in a very perfunctory manner, and in fact never discussed anything other than the instant offense in detail. (*See Matter of Coaxum v New York State Bd. of Parole*, 14 Misc 3d 661 [Sup Ct, Bronx

County 2006].) Likewise, while the Board's written decision touched upon all of the obligatory language so often regurgitated in these matters, it provided no specific explanation as to *why* the Board believed petitioner presents a danger to society. As indicated above, the reasons for denying parole must "be given in detail and not in conclusory terms." (Executive Law § 259-i [2] [a] [i]; *Matter of Wallman v Travis*, 18 AD3d 304 [1st Dept 2005]; *Matter of Malone v Evans*, 83 AD3d 719 [2d Dept 2011].) Reviewed in context with the entire record, the Board's written decision in this matter fails to meet the requirements as set forth in Executive Law § 259-i, *Wallman*, and *Malone*.

Respondent argues that *Hamilton* and Executive Law § 259-i (5) significantly limit judicial review to whether the Board acted in accordance with the law. This court reads *Hamilton* differently, and although it agrees with the dissenting opinion of Hon. Karen Peters, must nevertheless apply the *Hamilton* holding to the case at bar. The Third Department held that as long as the Parole Board violates no *positive statutory requirement*, the court cannot disturb its decision. In the instant matter, this court has determined that the Board violated a positive statutory requirement by failing to provide a detailed decision. There is no detail in the decision, and it reads more or less just like the decision from petitioner's previous parole denials and those this court reviews in hundreds of other parole denials. There is no explanation for a denial of parole, other than reiterating the facts of the crime. That is insufficient. Petitioner has already been tried for murder and was convicted and sentenced by a judge pursuant to statutory guidelines. Parole interviews were not intended to circumvent the sentencing guidelines created by the legislature; if the legislature saw fit to punish murder in the second degree with a sentence of life without parole, it could have done so. Allowing a parole board to rely on the seriousness of the instant offense in every decision to deny parole release to an inmate who is serving an indeterminate sentence of a minimum amount of years to life, and who is otherwise ready for release, amounts to nothing short of allowing the parole board to rewrite the sentencing guidelines for murder in the second degree to life without parole until a parole board decides otherwise.

This court does not interpret *Hamilton* to mean the Division of Parole can forever rely on the nature and seriousness of the underlying offense to deny parole forever to an inmate whose record indicates he has been rehabilitated. (*See Matter of*

*Rabenbauer v New York State Dept. of Corr. & Community Supervision*, 46 Misc 3d 603 [Sup Ct, Sullivan County 2014].) This court does not interpret *Hamilton* to mean that appointed and unelected commissioners have the discretion and power to re-try, resentence, and punish inmates in contravention of the statutory mandates and punishments meted out by judges.

Because the written decision lacks specificity, this court is left with no ability to evaluate why the Commissioners on the Board denied parole. Looking at the record as a whole, the court concludes that not only does the record fail to clarify on what specific grounds the Board denied parole, but the record strongly supports parole release for this inmate. The Board failed to comply with the affirmative statutory duty to specify why the Board concluded petitioner's release would be incompatible with the safety and welfare of society or why his release would deprecate the serious nature of the crime so as to undermine respect for the law. (*Rios.*)

> "While making a passing reference to [Petitioner's] 'clean disciplinary record and positive programmatic efforts,' the Parole Board made clear that those factors no matter how impressive, could not justify his release from prison when weighed against the seriousness of his crime. Thus, '[t]he passing mention in the Parole Board's decision of petitioner's rehabilitative achievements cannot serve to demonstrate that the Parole Board weighed or fairly considered the statutory factors where, as here, it appears that such achievements were mentioned only to dismiss them' in light of the seriousness of petitioner's crime (*see Matter of Phillips v Dennison*, NYLJ, Oct. 12, 2006, at 23, col 1; *quoting Matter of King*, 190 AD2d at 434.)" (*Rios*, 2007 NY Slip Op 50529, *4.)

The Board in this matter has failed to properly and specifically articulate any reasoning for its decision to deny parole release to petitioner, and therefore this court holds the decision was arbitrary and capricious and to a large extent, substantively unreviewable. The Board simply restated the usual and predictable language with no specificity or other explanation to justify parole denial. While this court recognizes the substantial discretion afforded to parole boards by statutory authority, and now in the Third Department under *Hamilton*, that authority and parole board decisions are still reviewable by courts and must stand up to the law and statutory requirements regard-

ing parole release interviews and procedures. The Court of Appeals affirmed *King* and it has not been overruled.

In the instant matter, the court finds that the Board failed to meet the statutory requirements of conduct by rendering a conclusory decision lacking in specificity as required by the statute, unsupported by the record and petitioner's history of incarceration.

Based on the foregoing, it is therefore ordered that the petition is granted to the extent that the Parole Board shall afford the petitioner herein a de novo parole hearing/interview within 60 days of the date of entry of this order, and a decision thereon not more than 15 days thereafter; and it is further ordered, that the de novo hearing/interview herein shall consist of at least two Parole Board members, none of whom sat on any prior parole hearing/interview concerning petitioner.